HENZE v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY. COMPANY, Appellant.

1. Railroad, Duty of Traveler Approaching : CONTRIBUTORY NEGLIGENCE. A traveler approaching a railroad track is bound to use his eyes and ears, so far as there is an opportunity, and where, by the use of these organs, danger may be avoided, notwithstanding the neglect of the railroad company's servants to give the signals, the omission of the plaintiff to use his senses to avoid the danger is concurring negligence entitling defendant to a non-suit.

2. Case Adjudged. In an action against a railroad company for the killing of plaintiff's husband and infant son at a public crossing, the testimony of plaintiff's witnesses showed that the deceased was driving, in a two horse wagon, at a slow walk, along a highway, which crossed the railroad, when they were run over and killed by a train ; and that the train was an extra, not running on regular time. The witnesses were not agreed as to whether the husband could have seen the train as he approached the crossing, but their testimony showed that while no bell was rung or whistle sounded, the train made plenty of noise, and the deceased could have

heard it if he had stopped and listened; that he did not stop to look or listen, or take any other precaution to avoid danger; that as he approached the track he was holding the lines loosely in his hands, apparently taking no notice of anything; that the roadway was dry and hard, and the rattling of the wagon interfered with the sound of the train. *Held*, that a demurrer to the evidence was well taken, and should have been sustained. NAPTON and NORTON, JJ., dissenting.

3. **Notice**: PRESUMPTION THAT TRIAL COURTS OBSERVE THEIR OWN RULES. If the record shows that a motion requiring notice was heard by the trial court less than five days after the service of notice upon the parties, this court will presume that such practice is permitted by the rules of the trial court, unless the contrary appear by the record. Section 3507, Revised Statutes, while prescribing five days as the general rule, authorizes the trial courts to shorten the time to less than five days.

4. **Bill of Exceptions.** If a motion for new trial filed in due time be continued to a succeeding term of court, a bill of exceptions filed at the term at which the motion is determined will preserve exceptions taken at the trial.

*Appeal from Audrain Circuit Court.*—HON. G. PORTER, Judge.

REVERSED.

*Wells H. Blodgett, Jno. F. Williams* and *Charles A. Winslow* for appellant.

*J. L. Smith, L. C. Krauthoff, Rudolph Hirzel, H. W. Johnson* and *Forrist*, for respondent.

HENRY, J.—Returning from Jonesborough in a two horse wagon, Fred Henze and his son, about six years of age, in passing over defendant's railroad at a public crossing in Montgomery county, known as Holland's crossing, were struck and killed by the engine of a passenger train running west. Plaintiff, the widow of Henze and mother of the lad, sued defendant for $10,000, alleging that the death of her husband and son was occasioned by the negligence of the defendant's employees in running and man-

aging the train. She obtained a judgment for $10,000, from which the defendant has appealed.

There was a conflict in the evidence for plaintiff, as to whether the deceased could have seen an approaching train after he turned south from the Boonslick road, until he got upon the track, a distance of 100 yards. Some of plaintiff's witnesses testified that, if he had looked, he could, and others that he could not have seen a train approaching from the east; but that he could have heard the train if he had stopped and listened was proven by John Thompson, Albert Kilgore, Anthony Horton, Rhoda Brooks, James Ferguson, Thomas Kimbal and Mrs. Drew, witnesses for plaintiff. Katie Wood, Douglas Kilgore, Thomas Patton and G. W. Lehne testified that they did not hear it. Thomas Patton was laying a floor in a corn crib, on the side of the road running south to the railroad track, working with an axe, and the noise he made at his work would probably have prevented him from hearing the noise made by the train. G. W. Lehne was 150 yards north of the crossing, traveling in a wagon, and the noise made by his wagon may have prevented him from hearing that made by the train. Douglas Kilgore was 130 yards south of the crossing, and Katie Wood was crossing the railroad track at a point west of the Holland crossing, and did not hear the train approaching until it came very near her.

The positive testimony of the witnesses who heard the train is not contradicted by that of those who did not hear it, and establishes the fact that Henze could have heard the train if he had stopped and listened. Whether one does or does not hear so that he can testify to a given sound depends upon the degree of attention he may give to its source. The familiar example of several persons being in a room where there is a clock, one or more of whom state that they heard it strike, while the others testify that they did not hear it, is an apt illustration of the difference between mere negative and contradictory evi-

dence.  If the witnesses are equally credible, although the number of those who say they did not hear it exceeds that of those who say they did, yet the testimony of the latter is to be regarded as establishing the fact, because it is consistent with, and not contradictory of, the negative evidence.  If the others had testified also that, for some particular reason, their attention was called to the clock when it should have struck, and that they did not hear it, a conflict of evidence would be presented.  The witnesses here simply stated that they did not hear the train, and their testimony does not contradict that of the other witnesses, or the inference to be drawn from it, that, if Henze had stopped to listen, he could have heard it.  Besides, all of the witnesses who said they did not hear the train, except Katie Wood, stated additional facts which explain why they did not hear it.  The witnesses who heard the train testified as follows:  Albert Kilgore, that he was south of the Holland railroad crossing 100 or 150 yards.    John Thompson, that he was thirty-five or forty yards south of the crossing and heard the train coming one-fourth of a mile.  Anthony Horton, that he was 100 yards west of the crossing and thirty or forty south of the road, and heard the train, and that it "made plenty of noise."  Rhoda Brooks was thirty yards west of the crossing, and heard it "rattle a good way off."    James Ferguson, who was north of the road, distinctly heard it seventy-five yards distant from him.

The plaintiff's evidence shows that Henze, the husband, "was sitting straight in the wagon, facing the railroad, holding the lines loosely in his hands and driving in a slow walk, not seeming to take particular notice of anything, and appearing like one driving two horses where there was no danger;" and the same witness stated that "the rattling of Henze's wagon interfered with the sound of the train."  Henze stopped neither to look nor listen, but drove on to the track without taking any precaution whatever to guard against danger.    The evidence for

plaintiff showed that neither a bell was rung nor whistle blown on the train. A demurrer to the evidence was overruled.

We see nothing in this case to distinguish it from *Fletcher v. Atlantic & Pacific R. R. Co.*, 64 Mo. 484, and *Harlan v. St. L., K. C. & N. Ry. Co.*, 65 Mo. 22. The only difference in the facts betwixt this and the *Fletcher Case* is that, in the latter, it was clearly established that, for some distance before he drove upon the railroad track, Fletcher, by looking, could have seen the approaching train, but the same principle is applicable here, if it be the law, as this court has held, that "a traveler approaching a railroad track is bound to use his eyes and ears, so far as there is an opportunity, and when, by the use of these senses, danger may be avoided, notwithstanding the neglect of the railroad servants to give the signals, the omission of the plaintiff to use his senses to avoid the danger is concurring negligence entitling defendant to a nonsuit." *Fletcher v. A. & P. R. R. Co., supra.* If Henze had used the precaution which common prudence dictates, it is not likely that the calamity would have occurred. If he had stopped to look and listen when near the track, and could neither see nor hear the approaching train, on account of the cut or other obstructions, and no signal was given from the train, he would have been justifiable in attempting to cross, and no negligence would have been imputable to him. But he had no right to drive along over a dry, hard road in a two horse wagon, the noise of which might prevent him from hearing an approaching train, and, without stopping an instant to see or hear, go upon the railroad track, except at his own peril.

This and the case of *The Pa. R. R. Co. v. Beale*, 73 Pa. St. 504, are as nearly alike in their facts as any two cases to be found in the books, and the supreme court of Pennsylvania there held that, "if the traveler cannot see the track by looking out, whether from fog or other cause, he

1. RAILROAD : DUTY OF TRAVELER APPROACHING : contributory negligence.

should get out, and, if necessary, lead his horse and wagon." We are not called upon, in this case, to assert so stringent a rule against the traveler as that, but the views we have expressed are fully sustained by *Benton v. The Central R. R. of Iowa*, 42 Iowa, 193, and *Lake Shore & Michigan Southern R. R. Co. v. Miller*, 25 Mich. 274, two cases similar to this; also by *Butterfield v. Western R. R. Corporation*, 10 Allen, 532. In Illinois, where the doctrine of comparative negligence is recognized, in the case of *St. L., A. & T. H. R. R. Co. v. Manly*, 58 Ill. 306, a case analagous to this in its facts, the court observed : "That the fearful result of the sad accident must be attributed most largely to his (deceased's) own want of proper care." In *R. R. Co. v. Houston*, 95 U. S. 702, the court observed, Field, J.: "The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to look and listen before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger." See, also, *Morris & Essex R. R. Co. v. Haslan*, 33 N. J. L. 149; *Flemming v. W. P. R. R. Co.*, 49 Cal. 253. The authorities cited fully sustain the doctrine announced by this court in *Fletcher v. A. & P. R. R. Co.*, and *Harlan v. St. L., K. C. & N. Ry. Co.*, and adhering to what was held in those cases, we reverse this judgment. SHERWOOD, C. J., and HOUGH, J., concur; NAPTON and NORTON, JJ., dissent.

NAPTON, J., DISSENTING.—I entirely concur in the general principles governing cases of this character asserted in the opinion of the majority of the court, but I doubt their application to the facts of this case. The deceased was driving in a slow walk, and the question is, whether we can say, as a matter of law, that he was guilty of negligence in not stopping his wagon, in order to place himself

in a better position for hearing, at a time when no train was due. It is plain that he neither heard nor saw the train, and it is plain that our law was disregarded by the defendant in neither ringing the bell nor sounding the whistle. Was it then the duty of a traveler to assume that the railroad company would disregard the plain provisions of our statute, especially in running an extra train, and, therefore, he should not trust merely to his eyes and ears, but must put them in a position in which it could be ascertained with certainty whether such total disregard of the statute would or would not occur? I doubt if our previous decisions require us to go so far. I concede that a traveler has no right not merely to disregard his own safety but the safety of the passengers on the road by a reckless course; he must use his eyes and ears, and although the positive requirements of our statute are disregarded, he has no redress, if the injury occurs through his own recklessness; but the question of negligence is one of fact as well as law, and although, where the evidence clearly establishes such negligence the court may at once pronounce it to be such as precludes all relief, there may be cases in which it must be left to a jury to say whether under the facts there was negligence or not. This was, in my opinion, such a case. The instructions were confessedly correct, and I am not prepared to say that the verdict was without evidence. I, therefore, am in favor of affirming the judgment. Judge Norton concurs in this view.

## On Rehearing.

Sherwood, C. J.—This case has been re-argued, not upon the merits, however, but upon the point of the sufficiency of the bill of exceptions, *i. e.*, whether it is to be regarded as part of the record in consequence of the steps taken in the lower court with that object in view.

I.  Conceding that the original entry of record was insufficient to authenticate the bill of exceptions and show

3. NOTICE: pre-sumption that tri-al courts observe their own rules. that it was "filed," we are all of opinion that any defect in this regard was remedied by the *nunc pro tunc* entry made at a subsequent term. It is insisted by counsel for plaintiff that the entry just mentioned did not have the effect designed, for the reason that the requisite notice was not given as required by law. The record shows that notice of the intended application was served on one of plaintiff's attorneys of record two days prior to the time fixed for hearing the application, and one day before such application upon another of plaintiff's attorneys who resided in the town where the court was held. The statute with regard to notices in general provides that: "Notices shall, unless a different time is prescribed by law or the practice of the court, be given at least five days before the time appointed for the hearing of the motion, pleading or other proceeding." This statute, it will be observed, only fixes five days as a general rule, for giving notices, and that this general rule is to prevail, "unless a different time is prescribed." Doubtless a different time could have been prescribed by the practice of the Audrain circuit court for the service of notices, other than that fixed by general statutory regulation; and, if such practice were at all consistent with reason, we would not interfere with it. It is to be presumed that, in making the corrective entry, the court conformed to a different time prescribed by its own practice for the giving of notices in such cases. Such presumptions are constantly indulged in, in respect to the action of the circuit courts. If the action of the lower court in the present instance did not conform with its rules of practice, it would be very easy to show it, and thus overthrow the course taken by that court in making the amendatory entry in question. As there is nothing appearing to combat the presumption above mentioned, as the party who alleges error in this regard has not proved it, such presumption, in accordance with a familiar rule, must continue to pre-

vail and give sanction and validity to the course in this respect which the circuit court took.

2. But it is pressed upon our attention that, even if the *nunc pro tunc* entry accomplished all it was designed to 4. BILL OF EXCEPTIONS. accomplish, the plight of the defendant is not bettered thereby, because, although a motion for a new trial was filed at the term the trial occurred, and was continued over and not determined until the next term, that no bill of exceptions having been filed at the trial term, when certain exceptions were taken, that such exceptions could not be saved or preserved by a bill of exceptions filed at the next term, upon the overruling of the motion for a new trial, which motion was incorporated in such bill. The contrary view has twice been held by this court, and a number of years ago, *Riddlesbarger v. McDaniel*, 38 Mo. 138; *Gray v. Parker*, Ib. 160; and we see no reason to depart from the ruling then made, especially as no case is to be found in our reports making a different ruling to that made in the cases just cited ; in fact, until now the precise point presented in the two cases in 38 Mo. *supra* has never been before this court. The statute requires that " all exceptions taken during the trial of a cause or issue before the same jury shall be embraced in the same bill of exceptions," but it was certainly never designed, where a motion for a new trial is made and then continued to the next term, that a bill of exceptions should be filed at the trial term to preserve the exceptions then taken, and then another bill of exceptions should be filed at the next term, whose sole office would be to preserve the motion for a new trial. And yet this must be plaintiff's position, if a motion for a new trial, when continued, has not the effect, as decided in 38 Mo. *supra,* of keeping the cause in the breast of the court, by reason of the pendency of the motion, until the motion is determined.

The case of *The State v. Ware*, 69 Mo. 332, bears no analogy to this one, for the reason that there the exception not saved by bill at the proper term was one occurring on a

preliminary motion for a change of venue, and besides, the trial did not take place at that term, and consequently no motion for a new trial was made and continued so as to carry the case over. These features distinguish that case very broadly from this. It has been the constant practice in this State to file a motion for a new trial, and to let the same go over for determination to the next term, under the belief that the pendency of the motion would operate as above indicated. In many instances, where the terms of the court are brief, or the verdict is returned near the end of the term, if the matters occurring at the trial could not be carried over in this way, especially if the trial involved the taking of a great deal of testimony and the saving of numerous exceptions, the practical result would be the affirmance of the judgment of the lower court. We shall adhere to our former rulings in this regard, and doing so, the judgment must be, as at first ordered, reversed. All concur.