GIVENS v. VAN STUDDIFORD, *Appellant.*

1. **Bill of Exceptions** : MOTION FOR NEW TRIAL. A bill of exceptions is properly made up at the term of the court at which the motion for a new trial is overruled. And it is immaterial that such motion was overruled at the third term after it was filed without being continued from term to term by any special or general order of court.

2. **Public Nuisance** : BAWDY HOUSE. A bawdy house is a public or common nuisance *per se*, but this is not the case when such house is authorized by law and kept in accordance with its provisions.

3. —— : ——. Where, in violation of the municipal ordinance regulating such house, the inmates so indecently expose or conduct themselves as to render the property of an adjoining proprietor undesirable or unfit for use and occupancy by decent persons, it becomes a common nuisance.

4. **Leasing Property for Bawdy House** : INJURY TO ADJOINING OWNER. To render the landlord responsible in such case to the adjoining owner for the depreciation in value of the latter's property resulting from such alleged nuisance, it must appear that he leased the property for the purpose of or knowing it would be used for a bawdy house and that he assented to the indecent conduct of the inmates, or continued the leasing after knowledge of the fact.

5. **Public Nuisance, Private Action for.** While, as a general rule, it is true that the law does not give a private action for a public wrong, an exception to this exists where a private person suffers some damage over and beyond the rest of the community by reason of a public nuisance.

6. —— : SPECIAL DAMAGE. In a private action for injury resulting from a public nuisance, the special damage suffered by the plaintiff must be averred and proved.

7. **Measure of Damages.** The loss of rents is a proper element of damages in an action against the lessor of a bawdy house by the owner of adjoining property for injury resulting to the latter from the nuisance.

8. ——. The depreciation in the value of the property, it having been sold at a forced sale during the continuance of the nuisance, is also a proper element of damages.

9.  **City Ordinance, When Must be Pleaded.** Where one asserts his right to recover upon a city ordinance, or seeks to justify an act done by him under such ordinance, he should plead it.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*James O. Broadhead, H. A. Haeussler* and *C. C. Simmons* for appellant.

(1)   The petition in this case does not set up or contain facts sufficient to constitute a cause of action.   This is a private action for a public nuisance, and there is no allegation or averment that the plaintiff had ever sustained any injury therefrom that was not common to the public at large, or which was not participated in by the public as well as himself.   It is an inflexible rule of law, that no single individual can maintain a suit, either in law or equity, to enjoin or abate a public and common nuisance, or to recover damages for himself occasioned thereby, unless he alleges and avers, and can prove that his injury is special and peculiar to himself, beyond, and of a different kind, and distinct from that which is sustained by the whole neighborhood or his fellow citizens generally.   Such injury must be direct and positive as well as particular and not consequential, speculative or conjectural.  *Butler v. Kent,* 19 Johns. 223 ; *Venard v. Cross,* 8 Kansas, 248 ; *Lansing v. Smith,* 8 Cowen, 146,  157 ; *Dougherty v. Bunting,* 1 Sanford, Sup. Ct. Rep. 1 ; *Wetmore v. Story,* 3  Abbott's Pr. Rep.  288, 289 ; *Adams v. Popham,* 76 N. Y. Appeal Rep. 410, 413 ; *Baxter v. Winsoski Turnpike Co.,* 22 Vt.  114 : *Hamilton v. Whiteridge et al.,* 11 Md. 128 ; *City of Baltimore v. Marriott,* 9 Md.  160 ; 19 Pick. 149 ; *Manhattan Gas Light Co. v. Barker,* 36 Howard Pr. Rep. 233 ; Wood on Nuisances, sec. 829, p. 878.   (2) The effect of the provision in section 1, article 3,  of the

amended charter of the city of St. Louis, approved March. 4, 1870 (Sess. Laws, 1870, 463–4), authorizing the city to suppress and regulate bawdy houses, was to repeal and entirely eliminate from the criminal code all the statutory and common law provisions in force, previous to that time, imposing penalties for keeping such houses, or renting them for such purposes, and so the Supreme Court expressly declared in the cases of *The State v. Kate Clark*, 54 Mo. 17, 23, 30 ; and *State v. Vic. De Bar*, 58 Mo. 395. English Draft Code, 1879, sec. 10 ; 2 Wharton's Criminal Law, sec. 1410 (8 Ed.) ; Wood on Nuisances, p. 2, note ; *Ib.* p. 787, sec. 750 ; 17 N. J. Eq. Rep. 75 ; 32 Michigan 419–420 ; *Leigh v. Westerfelt*, 2 Duer, N. Y. Sup. Ct. Rep. 618 ; *Williams v. Railroad*, 18 Barb. 247 ; Gibbons on Nuisances, 396 ; *Phœnix, etc., v. Com. of Em.*, 12 Howard Pr. Rep. 1–14 ; *Harris v. Thompson*, 9 Barb. 350 ; *Knox v. Mayor of N. Y. City*, 55 Barb. 404 ; Wood on Nuisances, sec. 757, p. 798 ; *Randle v. Pacific Railroad Co.*, 65 Mo. 325 ; *Transportation Co. v. Chicago*, 9 Otto, 635, 640 ; *The People v. Law*, 34 Barb. 514. (3) A landlord is not liable for a nuisance if at the time of the letting there is no actual nuisance on the premises. Gibbon on Nuisances, 407 ; *Owings v. Jones*, 9 Md. 108 ; Wood on Nuisances 116. (4) Where the defendant is not the original creator of the nuisance, he must have notice of it and a request must be made to remove it before an action can be brought. *Grigsby v. Clear Water Lake Co.*, 40 Cal. 396 ; *Pierson v. Glenn*, 2 N. J. Rep. (Green) 36 ; *Johnston v. Lewis*, 13 Conn. 303 ; *Noyes v. Stillman*, 24 Conn. 15 ; *Pillsbury v. Moore*, 44 Maine, 154, 156 ; *Carlton v. Reddington*, 21 N. J. 291 ; 1 Chitty on Pl. 94, note *m.* (5) The court erred in admitting the plaintiff's testimony to show that he might possibly have rented his premises had it not been for the improper conduct of the occupants of the defendant's house. The evidence was

merely speculative and conjectural. The testimony of the other witnesses as to the general character and reputation of the house and its inmates was also objectionable. . If the house was a nuisance *per se,* there is nothing to show that plaintiff suffered differently from others. If the house was a legalized nuisance, as we contend, then its reputation and that of its inmates in these respects, was only the natural and necessary consequence of the peculiar business, which, at the time, the law tolerated. (6) The court erred in excluding the testimony offered by the defendant as follows : The ordinance of the city of St. Louis, number 7330, entitled " An Ordinance to regulate Houses of Ill Fame," approved July 9, 1870. In the cases of the *State against Kate Clark and Vic De Bar,* above cited, the Supreme Court held that this ordinance was a valid one, and that a permit or license under it exempted the party holding it from any prosecution by the state for keeping such a house as is here complained of. Special matter as a license need not be pleaded specially. Wood on Nuisances, sec. 839 ; 1 Chitty Pl. 491 ; *Bird v. Randall,* 3 Burr. 1353.

*Thoroughman, Christian & Priest* for respondent.

(1) This court has no jurisdiction and cannot consider the appellant's appeal, as the same was not taken in the time required by law. The motion for new trial was filed November 28, 1881, but was not passed upon until the first day of May, 1882. As this court will take judicial notice of the time for holding the courts, it is clear that the bill of exceptions was not filed during the term at which the judgment was rendered ; nor does the record show any agreement by the attorneys that they might be filed out of time. *Ellis v. Anderson.* 25 Mo. 327 ; *West v. Fowler,* 55 Mo. 300 ; s. c., 59 Mo. 40 ; *State v. Ducknott,* 68 Mo. 156 ; *Riddlesbarger v. McDaniel,*

38 Mo. 139. (2) The petition sufficiently states a cause of action. *Marrott v. Baltimore*, 9 Md. 160 ; *Smith v. Boston*, 7 Cush. 254. (3) The evidence that the keeper of the bawdy house was licensed as such by an ordinance of the city was properly excluded. This evidence could not have been admitted, even if defendant had pleaded it as a special defence, and surely it was not admissible when it was not pleaded. *Nelson v. Brodhack*, 44 Mo. 596 ; *Smith v. Calligan*, 71 Mo. 387 ; *Atterberry v. Powell*, 29 Mo. 429 ; *Adams v. Trigg*, 37 Mo. 141 ; Pomeroy on Remedies, sec. 673. (4) Judicial notice will not be taken of a municipal ordinance. *Cox v. St. Louis City*, 11 Mo. 431 ; *Mooney v. Kennett*, 19 Mo. 210 ; *State ex rel. v. Oddle*, 42 Mo. 210. (5) The manner in which the business of the house was conducted rendered it a common nuisance, irrespective of the question as to the right of the keeper of the house to keep it as a bawdy one. *Cleveland v. Citizens Gas Light Co.*, 20 N. J. Eq. 201 ; Wharton's C. L., sec. 1424. (6) Where a landlord lets a house knowing that it will be used for the purposes of prostitution, he will be liable to those suffering injury from the nuisance. Wood on Nuisances, p. 36, sec. 30.

BLACK, J.—Some of the questions presented by this record were considered by the court of appeals on the first appeal. 4 Mo. App. 498. The opinion then filed was approved by this court. 72 Mo. 129. Questions not then considered are also now presented in argument and in elaborate briefs.

1. It is first insisted that there is no bill of exceptions of which the court can take notice for the purpose of disposing of the case on its merits. The cause was tried at one term of the circuit court, when a motion for a new trial was filed in due time. The motion stood over for two terms, was called up and overruled at the third term after it was filed, and the bill of exceptions was

then allowed in which the exceptions taken on the trial were for the first time saved. The motion does not appear to have been continued from term to term, or from any of these terms to the next, by any general or special order. In *Riddlesburger v. McDaniel*, 38 Mo. 138, it was said by Wagner, J. : "And until a final hearing and disposition of the motion (for new trial) the whole matter would unquestionably rest in the breast of the court, and it would be competent for it, in its discretion, for good cause, to sustain the motion and award a new trial. Until this result is reached, it cannot be said that the cause is finally determined. And as the statute requires all exceptions to be embraced in the same bill it would be correct if filed at the term when the matter is disposed of."

The statute to which reference was there made is the same as section 3636, Revised Statutes, 1879. It is argued that this section of the practice act was only designed to avoid filing so many bills during the progress of the same trial, and was not intended to carry the exceptions over until the motion for new trial was acted upon. The *Riddlesbarger case* asserted the doctrine that the exceptions taken on the trial of a cause might be preserved in the bill filed when the motion for new trial was overruled, though at a subsequent term of the court. That ruling was followed in *Gray v. Parker*, 38 Mo. 160, and recently in *Henze v. Ry. Co.*, 71 Mo. 644, and must now be regarded as the settled practice in this state. The ground upon which the rule must stand is that these matters of exception taken on the trial are in the breast of the court until the motion for new trial is determined. Either party had the right to and could have called up the motion at the term at which it was filed, or at any subsequent term, if he desired determination of the same. The bill of exceptions must, therefore, be considered as a part of the record.

2. The facts pleaded and undisputed are that

plaintiff owned a lot in St. Louis upon which there was and is a valuable building. He incumbered the property by a deed of trust for $20,000 in 1873 and the property was sold under this deed of trust in December, 1875. Defendant owned an adjoining lot upon which there was also a house. Plaintiff, in his amended petition, alleged that defendant leased his property to tenants for a house of prostitution and that it was so used with the knowledge of defendant; that the inmates indecently exposed themselves at the windows next to plaintiff's property, by reason of which plaintiff's property became undesirable and depreciated in value, so that he thereby lost rents, and the property did not sell for as much as it otherwise would have sold for.

The evidence shows that the plaintiff leased his property for a period of five years at an annual rental of $3,250, the lease expiring in December, 1872; that from February, 1873, the house was vacant for a year, when it was rented for a time and again became vacant. There was evidence to the effect that the loss of rent was due to the fact that defendant's house, during all this time, was used as a house of ill fame and because of the indecent exposure of the inmates as alleged, and that for like reasons the property was depreciated in value and that the defendant knew, as far back as 1872, the purposes for which his house was used, and that plaintiff had complained to him because of such use. The defendant offered evidence tending to show that the property in the neighborhood had ceased to be desirable residence property and was not good business property; that being in this condition the houses in the vicinity filled up, to a considerable extent, with this class of occupants, and that the depreciation of rents was due from this and other causes. It is clearly shown that defendant's house was, prior to 1870, and on to the sale of plaintiff's property leased to Kate Clark; that in 1870 she was registered as a keeper of a house of ill fame at this place by the city

authorities under what is called the social evil law. That ordinance, which was approved July 9, 1870, was offered in evidence by the defendant, but excluded by the court.

A bawdy house or house of ill fame is a public or common nuisance, *per se.* Hawkins P. C. 362 ; *Clementine v. The State*, 14 Mo. 112. That this is so, in the absence of any statutory provision or regulation, is clear enough. To conduct such a place, or lease property for such a purpose, is a public wrong. How far this proposition of law is to be regarded as modified by reason of certain local legislation is a matter of more difficulty. In *The State v. Kate Clark*, 54 Mo. 17, the defendant was indicted under the statute for keeping a bawdy house. She pleaded a license from the officials of the city of St. Louis, given to her by virtue of an ordinance passed by authority of the charter of 1870, which charter gave the mayor and council power to "regulate or suppress bawdy houses." It was there held that the license was a complete defence. In *The State v. Vic De Bar*, 58 Mo. 396, it was held that the act of March 30, 1874, which amended the charter of 1870 so as to deprive the city of the power to regulate such vices, did not revive the general law but still left it inoperative in the city of St. Louis. When the city legislature exercised the power to regulate such vices the ordinance had the effect, at least, to suspend the operation of the general law, so far as inconsistent with the ordinance. It must follow that the matter of regulating, instead of suppressing these houses, became and was the law in St. Louis so long as the ordinance in question was in force. Whether the law was well or ill advised is a matter with which we have no concern. The ordinance should have been admitted in evidence, for there was some evidence to the effect that this house was kept in compliance with its provisions.

It is difficult to see how we can hold such a place to

be a public nuisance *per se*, so long as it has the protecting hand of the law, and so long as kept within the regulations prescribed by the ordinance. There is nothing in the ordinance to justify such conduct, however, as is charged in the petition and supported by evidence in the cause. A trade, occupation or business, though lawful in itself, may and often does, from the time, place or manner in which it is conducted, become a nuisance. The same is true of those things unlawful in themselves but for statute law. The placing of a railroad in a public highway may be allowed by law, yet if so constructed or used as to unreasonably and unnecessarily obstruct public travel, it becomes a public nuisance. In view of this municipal legislation, the instructions cannot be sustained. They proceed upon the theory that such a place is a nuisance without further proof; that one who leases property for, or who knew that the premises were used for such purposes, is liable for special damages. They must go farther and leave it as a question of fact for the jury to determine, whether the inmates so indecently exposed or conducted themselves as to render the plaintiff's property undesirable or unfit for use and occupancy by decent persons. If they did this, there is no reason why the place should not be pronounced a nuisance, notwithstanding it may have been registered and the keeper licensed under these local laws.

To hold the landlord liable for damages, it must not only appear that he leased the property for the purpose of or knowing that it would be used for a bawdy house, but it must be found as a fact, under appropriate instructions, that he assented to such indecent conduct of the inmates, or continued the leasing after knowledge that the house was so used. In short, the facts must be found which will make the place a nuisance notwithstanding the ordinance, and defendant's assent to such use, or that he continued the lease knowing the prop-

erty was thus indecently used. We are not informed by the record, certainly not by the abstracts, whether the lease to this woman was from month to month, by the year, or for a period of years.

3. The question urged at length by counsel for defendant, *i. e.*, that the petition does not show any cause for a private action, is, we conclude, not well taken. Generally, it is true, for a public wrong the law gives no private action, but a well established exception is, that where a private person suffers some damage over and beyond the rest of the community by a public nuisance he shall have a private action for such damage. 3 Black. Com. 220; *Barden v. Crocker*, 10 Pick. 388; *Stetson v. Faxon*, 19 Pick, 147. Beyond doubt, the special damage must be averred and proved. *Smith v. McConathy*, 11 Mo. 517. It is true, the petition does not in so many words allege that the injury suffered by the plaintiff was other and different in kind from that suffered by the community in general, but it does, as we have seen, in detail show that he was deprived of the full use and enjoyment of the rents of his property. A slaughter house may be a common nuisance and alike uncomfortably affect all who come within the locality, but to those who live or own property in the immediate vicinity and are disturbed in the use or enjoyment of their property an action will lie. It is no objection that others similarly situated may also have a private action. Wood on Nuisances, 736, 737. Nor is it any objection that all those who contribute to the injury are not made defendants. *Woodyear v. Schaefer*, 57 Md. 1. The petition, in so far as it discloses special damages, is in conformity with well established precedents. 2 Chitty Plead. 789. It is well enough, whether the nuisance be public or private. The motion to strike out parts of the petition was properly overruled. It attempted to eliminate from the petition some of its most essential elements.

4. As to the measure of damages the rule seems to be well settled that if the nuisance be such as may be removed or abated, or for the continuance of which other actions may be brought, loss of rents is a proper element and permanent damages are not allowed. *Pinney v. Berry*, 61 Mo. 359. But where the "injury inflicted is of a permanent character and goes to the entire value of the estate the whole injury is suffered at once, and a recovery should be had therefor in a single suit, and no subsequent action can be maintained for the continuance of such injury." *Van Hoozier v. Ry. Co.*, 70 Mo. 145; *Dickson v. Ry. Co.*, 71 Mo. 579. The general rule is the loss actually sustained up to the commencement of the suit. The loss of rents occasioned by reasons of the nuisance complained of is, therefore, a proper matter to be considered in estimating the damages. In view of the forced sale of this property during the continuance of the nuisance, if any there was, we see no reason why the plaintiff may not recover also for the actual depreciation in the value of the property at the date of the sale. The damages must be limited to such as were produced by the nuisance complained of. Damages occasioned by other houses of a like character must be excluded. The instructions can be made clear in this respect. The fact that such damages are not susceptible of mathematical certainty is no objection to their allowance. They seldom, in this class of cases, assume that form.

5. Where a party asserts and founds a right to recover upon a city ordinance, he should plead the ordinance, and where a party seeks to justify an act by him done under an ordinance, it would seem he should also plead the ordinance. *Mooney v. Kennett*, 19 Mo. 552; *State ex rel. v. Oddle*, 42 Mo. 210; *Culligan v. Studebaker*, 67 Mo. 372. But we do not see that these principles apply to this case. The plaintiff does not found his right to recover upon any ordinance. Nor does it

appear that the defendant was required to procure a license or permit to rent his house. The broad question is presented, was this house so kept as to be a nuisance, notwithstanding the ordinance?

The judgment is reversed and cause remanded. All concur.