## JAMES D. AKINS et al., Respondents, v. CITY OF HUMANSVILLE, Appellant.

**Kansas City Court of Appeals, November 16, 1908.**

1. **CONTRACT: Reformation: Water Supply.** The action of a trial court in refusing to reform a contract made between a city and a landowner for a water supply is affirmed.

2. ————: **Water Lease: Construction: Hydrants: Decree.** A contract of lease between a city and a landowner providing for hydrant on the landowner's property is construed and held to provide only one hydrant on the premises of the lessor and that at his residence; and a decree ordering water supplied to the residence of the lessor's son until the hydrant was opened at the lessor's house, is error.

3. **TRIAL AND APPELLATE PRACTICE: Bill of Exceptions: Time of Filing.** A bill of exceptions to the matters occurring at the trial need not be filed until after the motion for new trial is overruled, even though that should not be until a succeeding term.

4. ————: ————: ————: **"Until."** Although leave to file bill of exceptions "until" the next term of the court will not warrant the filing of a bill after the first day of such term, yet such order cannot affect the right to file a bill of exceptions at any time during such term when the motion for new trial is overruled at said term.

Appeal from Polk Circuit Court.—*Hon. Argus Cox, Judge.*

REVERSED AND DISMISSED.

*G. C. Burnside and Rechow & Pufahl* for appellant.

(1) There being no contract in writing with James D. Akins he could not recover. R. S. 1899, sec. 6759; Crutchfield v. Warrensburg, 30 Mo. App. 456; Woolfolk v. Randolph County, 83 Mo. 501. (2) The decree or finding is not supported by the evidence. (3) The judgment should have been for defendant. Iron Co. v. Lancaster, 15 Pa. Sup. Ct. 556, affirming 17 Lanc. L. Rev. (Pa.) 161; Sanders v. Brown (Ala.), 30 So. 732. (4) Injunction will not issue where the terms of the contract are vague or uncertain. Sanders v. Brown [Ala.], 30 So. 732; 7 Am. and Eng. Dec. in Equity, Note on page 553; 2 Current Law, page 422; High on Injunctions [2 Ed.], sec. 1256. (5) The testimony of the plaintiffs and their witnesses, John R. Akins and Geo. W. Vaughn, in regard to what transpired before the execution of the lease, was not competent. All verbal negotiations and agreements were merged in the written lease. Kilpatrick v. Wiley, 197 Mo. 164; Hotel Co. v. Bailey, 3 Mo. App. 598; Bignell & Keeler v. M'f'g Co., 59 Mo. App. 678; State ex rel. v. Hoshaw, 98 Mo. 358; Morgan v. Porter, 103 Mo. 140; Tracy v. Iron Works, 104 Mo. 199; Bank v. Cushman, 66 Mo. App. 102; Evans v. Brass M'fg. Co., 118 Mo. 553; Johnson County v. Wood, 84 Mo. 515. (6) Neither was the testimony of plaintiff, James D. Akins, as to what the mayor or any other city official told him competent. No statement of either party made after the execution of the contract can affect or diminish its force. Water Co. v. Aurora, 129 Mo. 579.

*C. H. Skinker* for respondents.

(1) When time is given "to" a term, or "until" a term to file a bill of exceptions the bill must be filed on or before the first day of such term. Queensware Co. v. Smith, Saxton & Co., 107 Mo. App. 13; De Haven v. De Haven, 46 Ind. 296; Corbin v. Ketcham, 18 Ind.

138; Montgomery v. Reed, 69 Maine 510; Mill Co. v. Sugg, 142 Mo. 364. (2) There being no bill of exceptions the terms of the lease or contract between Akins and the city are not before the court. Freeman v. Moffit, 135 Mo. 278. While plaintiff's answer sets out what purports to be the contract the allegations of the answer are put in issue by the reply and the answer of course does not prove itself. (3) An ordinance authorizing the contract will be implied although not specifically pleaded. Werth v. Springfield, 78 Mo. 107. (4) This being a suit in equity plaintiffs are not bound by the findings of facts by the trial court. State ex rel. v. Jarrett, 183 Mo. 204; Patterson v. Patterson, 200 Mo. 335.

ELLISON, J.—The defendant is a city of the fourth class and this is a proceeding for a mandatory injunction to prevent such city from shutting off the water supply of plaintiff James D. Akins. The decree was for the plaintiffs and defendant appealed.

It appears that there is a large spring in or near the corporate limits of defendant, of sufficient flow to furnish the city with water for public purposes and for the private use of the inhabitants. The ground out of which the spring issues is known as Block 13 and the greater part was owned by the defendant Thomas J. Akins. The other part was owned by defendant James D. Akins, who is his son. But the spring was on the part owned by Thomas. There were two residences on the property, one larger and nearer the spring, owned by Thomas, and the smaller one owned by James. There was a mill near by, and plaintiffs likewise had a general merchandise store building in the city proper.

The city concluded to put in a system of water works, and desiring to obtain its supply of water from this spring, it and plaintiff Thomas entered into a written lease contract (executed in duplicate as required

by statute) whereby Thomas leased a water supply from the spring to the city for a period of ninety-nine years, the consideration being that the city should pay him fifty dollars per annum, and second, "shall put in (as soon as the waterworks system is completed), keep and maintain one water cock or hydrant in the yard of the residence at the spring." Third, "shall put in, keep and maintain, one fire hydrant on Mill street, located conveniently so as to furnish fire protection to the residence and mill property at the spring." Fourth, "shall put in, keep and maintain one water cock or hydrant at the Akins store building on Ohio Street, known as the Peoples' Headquarters." And fifth, "shall at its own expense keep said water cocks and hydrants as above specified in good condition and repair, and shall, as soon as the city waterworks system is completed, furnish water at said cocks and hydrants free of charge to the owner or occupier of said property sufficient for his or their own private use, for and during the continuation of this lease."

The city put in the system of works and, among other things, laid a water pipe from "its main" to within a short distance of James' residence, and James laid a connecting pipe thence on to his premises and put in a hydrant. He began using the water and the city afterwards made demand for its water rates, which he refused. The city thereupon threatened to, and were about to, cut off his supply, and this proceeding was begun to prevent it. We may remark here that James had no record title to his part of the premises until some time after the making of the lease, when his father made him a deed. We will also state that defendant insists that plaintiff Thomas had sold his part of the premises to one Walton before this proceeding was begun, and it asked that he be brought in as a party. But these matters do not figure in our conclusion and

we merely state them as a part of the history of the case.

In the original petition Thomas was alone made plaintiff. In the amended petition James was added as a coplaintiff. Plaintiffs, claiming in effect that the original contract was made by Thomas for himself and James and that James' interest and share in the contract had been omitted by mistake, asked that the contract be reformed so as to include a right for a free water supply to James' residence. The language of the petition is that the contract as by mistake written "did not specify the further consideration upon which the lease was made, that said Akins and his assigns should have the right to tap the pipes at said water cock or hydrant and use the water on any part of said premises, especially at either or both the residences situated upon said block, upon which said spring was situated."

The trial court, by its decree, refused to reform the contract and we consider that to be supported by the evidence.

But the court proceeded to find that James had occupied his part of the premises for several years prior to the lease, though he did not become the owner until near a year after the execution of the lease. That James put in a hydrant at his place and the city began to supply him with water which it afterwards "wrongfully and in violation of its contract and lease threatened to cut off," etc. And "that neither said city nor the plaintiffs, nor any one claiming under them, have put or attempted to put any hydrant upon said Block 13, except the said hydrant put upon" James' premises by him. The court then proceeded to enjoin the city from shutting off the water from James' residence and to order that it furnish him or his assigns his or their private supply during the life of the lease, "unless suit shall sooner be duly instituted against said city of Humansville to compel it to put in and maintain an-

other hydrant or water cock upon said Block 13, in which event and upon the happening thereof, the injunction herein granted shall be dissolved and plaintiffs' rights hereunder shall cease."

We are of the opinion that the conclusions of the trial court cannot be upheld. If the contract is not to be reformed and is to be taken as written, James had no right or part in it. It provided for but one private premises, the residence at the spring. Whether the city has or has not supplied, or made provision to supply, the other residence does not concern James, nor does it afford him any advantage or ground of complaint. The trial court must have so viewed the contract; for while it ordered him to be supplied during the lease, it added the proviso: "unless" a suit shall sooner be instituted to compel the city to put in the hydrant agreed upon. It would appear that the court concluded that one hydrant was to be put in by the city and until that was done it should supply with water the one put in by James. But, as already said, James cannot profit by the failure of the city to put in the hydrant agreed upon in the lease.

It is insisted by plaintiffs that defendant has not a bill of exceptions which can be recognized by the law. Leave to file a bill was given and then extended and the claim is based on the matter of proper extension of time. It seems that judgment was rendered on the 24th of June, 1907, and a motion for new trial was filed that day. But the motion was continued and it was not decided until the 18th of October of the following term. It was then overruled and thereupon, on that day, leave was given until the last day of the next term thereafter to file a bill of exceptions. Afterwards the time was duly extended to the next term, when the bill was filed. A bill of exceptions to matters occurring at the trial need not be filed until after the motion for new trial is overruled, even though that should not be until a suc-

ceeding term. [State v. Larew, 191 Mo. 192, 196; Fendrich v. Burress, 129 Mo. App. 456; Estate of Howard, 128 Mo. App. 482; Henze v. Railway, 71 Mo. 636; Givens v. Van Studdiford, 86 Mo. 149; Walter v. Scofield, 167 Mo. 537, 546.]

It appears that on the day the judgment was rendered and the motion for new trial was filed, there was an entry of record extending time for filing a bill of exceptions "until" the following term. If that order is the one upon which the defendant must depend, the bill was not filed in time, for it was not filed until after that term had been in session many days. "Until," in this connection, would mean no longer than the day of the beginning of the following term. [Queensware Co. v. Smith, 107 Mo. App. 13.] But that order, entered as it was on the day the motion for new trial was filed, cannot be allowed to affect the rule we have just stated. It could not apply to the condition of the case as it then existed, for at that time the bill of exceptions was to await action on the motion. We think the bill was properly preserved.

After a thorough examination of the case made we conclude the judgment should be reversed and the proceeding dismissed. It is so ordered. All concur.