## Childs v. The Kansas City, St. Joseph & Council Bluffs Railroad Company, *Appellant.*

### Division One, July 3, 1893.

1. **Practice:** MOTION TO SET ASIDE JUDGMENT: KEEPING RECORD OPEN: APPEAL. Where no motion for new trial or in arrest of judgment is interposed and the term of court ends, the pendency of a motion, filed more than four days after trial, to set aside the judgment because the petition fails to state facts constituting a cause of action, will not have the effect to keep the antecedent record open until the next term for a general review as a matter of right. (*Per* BARCLAY, J.) (*Per* BLACK, C. J., BRACE, MACFARLANE, JJ.)

2. ———: STRIKING OUT PLEADING: EXCEPTIONS: MOTION FOR NEW TRIAL. The action of the trial court in refusing to strike out a pleading is a matter of exception, and such action will not be reviewed in an appellate court, unless it has been called to the attention of the trial court in a motion for a new trial timely filed.

3. **Supreme Court Practice:** ERRORS OF RECORD PROPER, OBJECTIONS TO. The failure of the petition to state sufficient facts to constitute a cause of action is an error on the face of the record proper and the supreme court will reverse a judgment founded on such petition, though no objection was made to it by motion in arrest or for a new trial or in any other way in the trial court, unless the defect is one which is cured by the statute of amendments or jeofails.

4. **Practice:** JUDGMENT, SUSPENSION OF BY MOTION FOR NEW TRIAL. A motion for a new trial filed at the proper time and term suspends the judgment so that a bill of exceptions may be filed and an appeal taken during the term at which the motion is overruled.

5. **Supreme Court Practice:** BILL OF EXCEPTIONS: APPEAL. Such a bill of exceptions and appeal will bring up for review in the appellate court all the exceptions saved during the progress of the trial at the prior term.

6. **Practice:** JUDGMENT, SETTING ASIDE OF. A judgment, as a general rule, cannot be set aside by the court rendering it after the term at which it was entered, but during the term it may be set aside.

7. ———: ———. A motion filed, at the term during which the judgment was rendered, to set it aside, and continued over until the next term, suspends the judgment so that the motion may be sustained at the succeeding term.

8. ———: ———. The judgment is not a finality until the motion is disposed of.

9. **Supreme Court Practice**: ERRORS ON FACE OF RECORD PROPER. While the supreme court will, on appeal or writ of error, reverse a judgment for errors appearing on the face of the record proper, though no objection was made in the trial court, yet it is proper practice to make such objection, even where the error is a vital one, thereby giving the trial court an opportunity to corrects its own errors.

10. **Railroad**: LANDOWNER: WAIVER: EJECTMENT: TRESPASS. A land owner may waive prepayment of compensation by a railroad for land taken for a right of way, and when he does so, or permits the company to take possession and to construct its road, he cannot treat the company as a wrongdoer and sue in ejectment or trespass.

11. ———: ———: ———: ———: ———. Where, however, the railroad company builds its road upon the land without having acquired a right of way under the eminent domain law and without the consent of the landowner, the latter may recover in ejectment or trespass.

12. ———: ———: ———: ———: ———. Mere inaction on the part of the landowner, though he is informed of the fact that the company has entered or constructed its road upon his land, will not deprive him of his remedies of ejectment or trespass.

13. ———: ———: ———: ———: ———. The doctrine that the public has in such case an interest to be protected cannot be invoked to justify a wrongful entry on and use of private property.

14. **Waste, Assignment of Action for.** A claim for damages for trespass and waste committed on real estate is assignable.

15. **Cotenants**: OUSTER: EJECTMENT. One tenant may recover in ejectment against a cotenant by showing that the latter ousted him or did some act amounting to a total denial of his rights as such cotenant, and in such case the plaintiff, if he prevails, is entitled to recover damages for waste and for rents and profits.

16. ———: ———: RAILROAD. The use by a railroad for a right of way of farming land owned by it jointly with plaintiff, *held*, of necessity to have excluded the latter from possession and to have constituted an ouster.

17. **Waste**: COTENANTS. The excavation and removal of rock by a cotenant from the joint land and selling the same and thereby diminishing the value of the estate constitutes waste.

18. **Code Pleading**: AMENDMENT. A petition may be so amended, under the code, as to include a continuation of the acts of waste after the date of the filing of the original petition, and this is true whether the suit be one at law or in equity.

19. ————: MISJOINDER OF CAUSES OF ACTION. The objection that the petition contains two causes of action which should have been separately stated must be made by motion to elect.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

Plaintiff had judgment on the circuit, and defendant appealed at a subsequent term, after his motion to set aside the judgment (filed more than a month after the latter was rendered) had been overruled. That motion was as follows, viz:

"Now comes the defendant and moves the court to set aside the judgment rendered at the present term of this court, in the above entitled cause, and as the grounds of its motion states:

"1. That there is no equity in the bill.

"2. That the petition herein fails to state facts sufficient to constitute a cause of action.

"3. That upon the record the judgment is erroneous.

"4. That the petition herein affirmatively shows that the plaintiff and defendants are not tenants in common, in that it shows that the relative rights of the defendant and the owners of said land, were of such a nature and character that if any remedy remained to plaintiff, or to his grantors, such remedy was a right of action against the defendant for the value of the easement which had been appropriated.

"5. The basis of plaintiff's suit is that Hannah Parsons, or her heirs, were never paid compensation for the lands belonging to them which had been appropriated. The bill fails to disclose whether the entry and original taking and damage was done during the lifetime of Hannah Parsons, or after her death, and, hence, fails to show that plaintiff has any action against defendant.

"6. If it be conceded that Hannah Parsons, or that her heirs, had a cause of action against the defendant, or against its predecessor, the bill fails to show that plaintiff succeeded to their right of action.

"7. The petition fails to state facts sufficient to show that plaintiff has any right of action whatever for the easement taken and appropriated for railroad purposes out of the land described in the petition, during the time that said land was owned by George S. Park and the heirs of Hannah Parsons, as tenants in common, or for any damages sustained by either Park or the Parsons during their ownership, by reason of such appropriation or any occupancy subsequent thereto.

"8. The petition affirmatively shows that defendant obtained an easement over said land from the party holding the fee simple title thereof; that the plaintiff took subject thereto; that the only right which Park intended or attempted to transfer by his deed' to plaintiff was the right to the compensation which it was claimed was due to the Parsons heirs. This was assigned without recourse by the said Park, and only so far assigned 'as said Park was able to transfer his rights thereto.' The bill shows that the said Park never had any rights thereto.

"9. The petition fails to state facts sufficient to constitute a cause of action between plaintiff and

defendants as tenants in common, or any ground for accounting between them as such.

"10. The petition shows on its face that plaintiff, if he had any right of action against the defendant, has an adequate remedy at law. The record shows that plaintiff and defendant if they had ever been tenants in common, had ceased to be such before the filing of the present petition. The assignment by a tenant in common to his right for an accounting, makes said right cognizable only in a court of law; plaintiff, therefore, should not have been permitted to file a bill in equity for an accounting as an amendment to the original and first amended petitions herein, each of which stated a cause of action at law.

"11. The court erred in overruling defendant's motion to strike out the supplemental bill filed herein.

"12. The record shows on its face that the plaintiff recovered upon a cause of action which he did not own or have at the commencement of this suit.

"13. The record shows the defendant was charged and a recovery had against it as a tenant in common, during a period of time in which the bill affirmatively shows that plaintiff and defendant did not so hold the land.

"14. The petition prays that an accounting be had for rents and profits recovered by defendant as a tenant in common, from the common property during a specified time; and that there was no tenancy in common during nineteen-twentieths of the time specified. The evidence failed to show that any profits were received during the remaining one-twentieth of the time. Yet the plaintiff recovered for all profits received during the entire time specified. The record shows that the plaintiff recovered as a tenant in common, owning one-half of the right of way,

while the petition shows that he only owned one-fourth of the interest claimed.

"15. The record shows that a recovery was had in this case by plaintiff against the defendant as a tenant in common, for the mere taking and appropriation by the defendant of material from the common property."

"17. The judgment is not responsive to the issues stated in the pleading, or to the cause of action stated in the petition herein.

"18. Because the judgment is against the law.

"19. Because the judgment is against the evidence.

"20. There was a total failure of proof."

The other essential facts are given in the opinions.

*Spencer, Burnes & Mosman* for appellant.

(1) The bill does not state facts which warrant the court in granting the relief awarded in the judgment rendered in the cause. A judgment must be responsive to the issues made in the pleadings. So a party will not be permitted to try his cause on one theory in the trial court, and then, if beaten on the ground of his own choosing, spring a fresh theory on his adversary in this court. *Bray v. Seligman,* 75 Mo. 31; *Clements v. Yeates,* 69 Mo. 623; *Stix v. Mathews,* 75 Mo. 96; *Summers v. Rogers,* 90 Mo. 330. (2) The judgment is erroneous on the record proper because even as tenants in common, plaintiff was not entitled to recover for the defendant's use and occupation of the right of way. Before a cotenant can be held personally liable for rent through his own use and occupation of land, a special agreement to that effect must be shown. *Sargeant v. Parsons,* 12 Mass. 149; *Evarts v. Beach,* 31 Mich. 135; *Ragan v. McCoy,* 29 Mo. 366; *Dodd v. Barry,* 15 Mo. App. 595. Here the right of way is for

railroad purposes and it can be used for no other. *Davenport v. Lamison*, 21 Pick. 74; (3) Plaintiff and defendant are not tenants in common; because the deed made by Park to the defendant was, *first*, his express consent to the use of the land by the defendant as a railroad right of way; *second*, his express waiver of immediate payment of the balance of the compensation and his express consent that the unpaid portion of the compensation should be treated "as a mere debt." "By such consent and permission they have yielded to the company the permanent right of occupancy upon and over the land, subject only to compensation which they are at liberty to exact or waive altogether." *Railroad v. Strange*, 23 N. W. Rep. 432; *Provolt v. Railroad*, 57 Mo. 263; *Hosher v. Railroad*, 60 Mo. 329; *Kanaga v. Railroad*, 76 Mo. 213; *Hawlin v. Railroad*, 61 Wis. 515; *Prybylowiez v. Railroad*, 17 Fed. Rep. 492; *Harlow v. Railroad*, 41 Mich. 338. The right of the railroad company in cases where there is such consent, "comes not through this proceeding (of condemnation), but by its original entry and appropriation without objection." *Lawrence's Appeal*, 78 Pa. 365; *Davis v. Railroad*, 114 Pa. 312; *Lewis v. Railroad*, 11 Rich. (S. C.) 91; *Moore v. Boston*, 8 Cush. 278. (4) Plaintiff and defendant cannot be held to be tenants in common of the right of way because the deed from Park to defendant vested in it title to the entire right of way. The deeds do not disclose any intent on the part of the parties to create a tenancy in common.

*Hugh C. Ward, Frank Hagerman* and *Warner, Dean, & Hagerman* for respondent.

(1) When, on July 6, 1872, plaintiff went into possession, under a bond for a deed, he became in equity the absolute and beneficial owner of all the inter-

est of the vendors. 1 Pomeroy's Eq. Jur., sec. 368. Lewis or Eminent Domain, sec. 318. (2) All the damages done from the time of the contract vest absolutely in the vendee under the bond, especially where it appears at the trial that the legal title was in him. *Pinkerton v. Railroad*, 109 Mass. 527; *Railroad v. Ingalls*, 15 Neb. 123; *Kuhn v. Freeman*, 15 Kan. 423, 426; *Railroad v. Wilder*, 17 Kan. 239, 246. (3) If Park had any cause of action it was assignable. *Chouteau v. Boughton*, 100 Mo. 406. (4) A land owner whose property has been taken has various remedies. He can maintain injunction to prevent the maintenance of the road (Lewis on Eminent Domain, secs. 618, 631, 634 and 647), or trespass for the wrongful act in entering (*Ibid.* secs. 318, 649); or he can elect to treat the act of the road as a permanent appropriation and sue as for breach of an implied contract. *W. I. v. Co.*, 112 U. S. 645; *Cohen v. Railroad*, 34 Kan. 158. (5) The acquisition of title by condemnation does not condone a trespass by the railroad in originally entering without consent. *Powers v. Hurmert*, 51 Mo. 136; *Railroad v. Randolph Town Site Co.*, 103 Mo. 451; Lewis on Eminent Domain, sec. 318, and authorities cited. (6) And the rule is well settled that even though the railroad company enter with consent, the title to the land does not pass until a compensation is actually made. *Walther v. Warner*, 26 Mo. 277; *Bradley v. Railroad*, 91 Mo. 501. Such is the express mandate of the constitution. (Const. art. 2, sec. 21. (7) Tested by these considerations, it must be plain that the railroad company using the land from 1872 to 1882 without a shadow of title, and permanently destroying the value of the land by the removal of rock therefrom, was liable for the value of the use and the damage done to the realty by the removal of the rock. (8) There can be no question as to a tenancy in common. That relation can

exist as to any kind of property and as to any kind of interest. A dominant estate can be owned by one, and that owner be a tenant in common as to the servient, and *vice versa.* Freeman on Cot. & Part. [1 Ed.] secs. 88, 92, 97, 98, 186, 187. Thus a widow with her life interest in a homestead is a tenant in common with the heirs. *McDougall v. Bradford,* 16 S. W. Rep. (Tex.) 618. So in such a case as this when a railroad acquires a title to an undivided interest in a right of way, the courts recognize and apply the principles in relation to tenancies in common. *Railroad v. Wason,* 3 Beavan (Eng. Ch.), 119; *Railroad v. McLanahan,* 59 Pa. St. 23. (9) If a tenancy in common existed, there can be no question as to defendant's liability, and Judge BLACK's former opinion on this subject is not even assailed in the application for the rehearing.

BARCLAY, J.—This action was brought to obtain an accounting between plaintiff and defendant as tenants in common, and a recovery from the latter, it being charged that defendant had excluded plaintiff from his rightful interest in the common estate and had also committed waste thereon to plaintiff's damage in the sum of $3,994, for which judgment was asked with other relief.

There were several amendments of plaintiff's original statement of the cause of action and to each of them defendant answered, except to the last. As to that, plaintiff's petition was finally taken as confessed and upon further hearing, a judgment against the defendant for the sum of $3,447.77 was rendered, February 20, 1888, at the January term of the circuit court of Jackson county, Missouri. At that term no motion of any sort was thereafter filed by defendant until April 4, 1888, when it moved "to set

aside the judgment" for reasons appearing in the state-
ment accompanying this opinion. That motion was duly
heard but was carried over to the next term and ulti-
mately overruled, June 12, 1888. At the latter (the
April) term, defendant took the now pending appeal,
after filing its exceptions.

On this record arises at once a question of a tech-
nical nature; but one which a proper regard for the
correct administration of law forbids us to ignore.

Defendant interposed no motion for new trial or in
arrest in the trial court. Its motion to set aside the
judgment was filed more than thirty days after the
date of the judgment. That motion is not based on
any irregularity of procedure. Its grounds assign only
judicial errors in the proceedings, the chief of which
being (and on that particular stress is laid here) that
the facts of the last petition do not sustain the judg-
ment which the trial court gave.

To warrant a review of such errors, upon an
appeal taken in the circuit court, the statute law
requires that such appeal be taken at the term at which
the final judgment occurs. (Revised Statutes, 1889,
sec. 2248.) An undisposed of motion for new trial or
in arrest, seasonably filed, will suspend the finality of a
judgment (for the purpose of appealing) until such
motion be determined. But where no motion of that
kind is interposed, and the term of court ends, the
pendency of such a late motion as that in question
now, to set aside the judgment, will not have the effect
to keep the antecedent record open until the next term
for a general review, as a matter of right.

The trial court, in its discretion, after expiration
of time to move for a new trial or in arrest, may set
aside a judgment during the term at which it was ren-
dered upon any ground that may satisfy the conscience
of the court. Whether it may exercise that discre-

tionary power afterwards, by carrying over a motion filed at the term of judgment, we need not decide. It is better to avoid, as far as possible, intimating an opinion on a point not in judgment. The trial court in the present case overruled the motion, so its power to sustain it does not come under review. It is evident that its denial of the motion (in view of the reasons assigned therein) presented no tenable ground for imputing error to the trial court because of that denial.

A motion to set aside a judgment for irregularity may be entertained by the trial court within three years after the judgment entry (Revised Statutes, 1889, sec. 2235), and a ruling upon such a motion may be reviewed upon appeal taken in season, with reference to that ruling. But such an appeal at a term subsequent to that at which the original judgment becomes final, cannot properly be extended to secure a review of errors that may have entered into the judgment. Even giving the motion "to set aside" a standing similar to one based on an irregularity of procedure, it could not rightly be held to open up the same range of review of errors which a writ of error would secure. To accomplish that object, under the law of Missouri, the appeal in the trial court must be made at the term at which the judgment becomes a final one. *Lengle v. Smith* (1871), 48 Mo. 276.

The present appeal, from the decision overruling the "motion to set aside," is groundless, so far as any irregularity is concerned; and, having been taken too late to reach a review of any alleged errors with which the original judgment may be tainted, the only appropriate action to be taken is to affirm the judgment, which is done accordingly. The other judges of this division concur in affirming, for reasons given in a separate opinion.

SEPARATE OPINION.

BLACK, P. J.—By the opinion just filed it is held that the appeal taken in this case brings nothing before this court for review. To this ruling I do not agree, nor do I agree to any of the reasons assigned therefor.

To an understanding of this appeal it is necessary to set out a concise history of the suit. As it now stands, it is an action to require the defendant to account for the use of one undivided half of a strip of land used by the defendant as a right of way, and for the one-half of rock taken therefrom. The plaintiff filed an amended petition, to which defendant filed answer. It was set up in this answer, among other things, that if the plaintiff and defendant were tenants in common, then the plaintiff's remedy was an action of account. Thereupon the plaintiff filed a second amended and supplemental petition, setting out at great length the grounds for an accounting. At the October term, 1887, the defendant moved to strike out this amended and supplemental petition because it stated an entirely new cause of action, which motion was overruled, and the defendant excepted and at the same time filed a bill of exceptions. The defendant did not file any other or further answer.

The cause came on for trial at the January term, 1888, and the defendant failing to appear, the plaintiff produced evidence and obtained judgment for $3,447. The defendant filed no motion for new trial or in arrest. At the same term, but more than four days after the rendition of the judgment, the defendant filed a motion to set the judgment aside. This motion was argued and submitted at the same term, the January term, but the court took the same under advisement until the next term, it being the April term, at which

term the court overruled the motion, and the defendant then sued out this appeal.

Two affidavits were read in evidence on the hearing of the motion to set aside the judgment, showing the reasons why the defendant's counsel failed to appear at the trial; but the fact that the cause was heard when counsel for defendant were absent is not made a ground for setting the judgment aside. Of the twenty grounds assigned in that motion, those now relied upon fall under these heads: *First,* the court erred in overruling defendant's motion to strike out the supplemental petition; *second,* the amended and supplemental petition fails to state any cause of action whatever.

1. It is well settled law in our practice that there is a plain distinction between mere matters of exception and errors appearing upon the face of the record proper. In order to give this court the right to review rulings which are matters of exception, the exceptions must be taken at the time the rulings are made, and they must be again brought forward in the motion for a new trial as grounds therefor, and they must be made matter of record by a bill of exceptions. The refusal of the court to strike out a pleading is a matter of exception and nothing more. *Bateson v. Clark*, 37 Mo. 31. The motion to set aside the judgment filed in this case cannot be treated as a motion for a new trial because it was not filed within four days after judgment as the statue requires. As the defendant filed no motion for a new trial, it follows that the alleged error in refusing to strike out the amended and supplemental petition is not before us for review.

2. The next question is, whether the grounds of the motion, to the effect that the petition states no cause of action, can be considered on this appeal.

Our code of civil procedure is explicit in this,—that the objection that the petition does not state facts suf-

ficient to constitute a cause of action, is not waived by a failure to make the objection by way of demurrer or answer. Revised Statutes, 1879, section 3519. In view of this and section 3776 it has been held, time and again, that this court will reverse for error appearing on the face of the record proper, though no exceptions were taken in the trial court. The record proper consists of the summons, pleadings, verdict and judgment. The failure of the petition to state facts constituting a cause of action, is an error appearing upon the face of the record proper. And hence it has been held in a long line of cases from an early day down to the present time, that this court will reverse a judgment had on a petition which fails to state any cause of action, though no such objection was made by motion in arrest or for new trial or in any other way in the trial court, unless the defect is one which is cured by the statute of amendments and jeofails. *Burns v. Patrick*, 27 Mo. 434; *Bateson v. Clark*, 37 Mo. 31; *Jones v. Fuller*, 38 Mo. 363; *Miller v. Davis*, 50 Mo. 572; *Peltz v. Eichele*, 62 Mo. 177; *State ex rel. v. Griffith* 63 Mo. 548; *McIntire v. McIntire*, 80 Mo. 471; *State ex rel. v. Scott*, 104 Mo. 26; *Smith v. Burrus*, 106 Mo. 96. It does not follow that every defect which might be reached by motion in arrest will be available without such motion. As said in *McIntire v. McIntire, supra*, the error must be a material one, and again in *State, etc. v. Scott, supra*, it must be a defect of a fatal character.

But it is said this appeal is of no avail to defendant because not allowed until the term after that at which the judgment was rendered. A motion for new trial filed at the proper time and term and continued over to the next term, suspends the judgment, so that a bill of acceptions may be filed and appeal taken at the term when the motion is overruled. Such a bill and appeal will bring up for review all the exceptions

taken during the progress of the trial at the prior term. *Riddlesbarger v. McDaniel*, 38 Mo. 138; *Gray v. Parker*, 38 Mo. 160; *Henze v. Railroad*, 71 Mo. 636; *Givens v. Van Studdiford*, 86 Mo. 149; *Randolph v. Mauck*, 78 Mo. 468. And the filing of a motion for rehearing in an appellate court after the adjournment of the term, under an order allowing the motion to be filed in vacation, continues the cause so that the opinion filed does not become the opinion of the court until the motion is disposed of at the next term. *State ex rel. v. Philips*, 96 Mo. 570.

As a general rule, a judgment cannot be set aside by the court rendering it after the term at which it was rendered; but during the term it may be set aside. And a motion filed at that term for that purpose and continued over to the next term suspends the judgment, so that the motion may be sustained at the succeeding term. Until the motion is disposed of, the judgment is not a finality. *Memphis v. Brown*, 94 U. S. 715; *Amy v. Watertown*, 130 U. S. 301; *Baker v. Baker*, 51 Wis. 538; *Windett v. Hamilton*, 52 Ill. 180. While, under the authorities before cited, this court will on appeal or writ of error reverse for errors appearing upon the face of the record proper, though no exception was made in the trial court, still it is proper practice to make the objection in the trial court, even where the alleged defect is a radical one appearing on the face of the record proper, thus giving that court an opportunity to correct the errors. A motion to set aside a judgment strikes at its validity, and when filed at the term at which the judgment was rendered and continued to the next term has the effect to suspend the judgment so that that the court can act upon the motion the same as at the prior term. The proceedings remain in the breast of the court until the motion is disposed of, and the appeal taken at the time when

the motion is overruled brings up the same matters for review as if taken at the term when judgment was entered. We are, therefore, in duty bound to examine the petition in this case, and if it states no cause of action, if it is radically defective, reverse the judgment.

3. Guided by the foregoing considerations we come to the objections urged against the sufficieny of the supplemental petition. This pleading states in substance, these facts: That one Stevens, being the owner of one hundred and two acres of land conveyed the same to Hannah Parsons and George S. Park in 1844, and the grantees then took possession; that Hannah Parsons died thereafter and prior to the sixth of July, 1872, leaving four heirs; that on the last named date Park and one of the four heirs of Hannah Parsons, by their contract in writing, sold the land to the plaintiff, Childs, and he then entered into possession; that on the fifteenth of September, 1873, the said four heirs of Hannah Parsons conveyed the undivided one-half of the one hundred and two acres to George S. Park; that prior to May 17, 1882, the defendant or its predecessor built and operated its road across the one hundred and two acres of land, but did not acquire any title nor assume to hold adversely to the owners; that on the last named date George S. Park conveyed to the defendant company the undivided one-half of a right of way one hundred feet wide across the track of land; but the conveyance was made "subject to the rights of the plaintiff in and to the other undivided half of said right of way;" that on the fourteenth of August, 1883, George S. Park, in execution of the before mentioned contract of date July 6, 1872, conveyed to the plaintiff said land, which conveyance was made subject to the conveyance made by Park to the defendant company of the undivided half of the right

of way; "and, by the express terms of said deed, the other undivided half of said right of way through said land was assigned, without recourse, with all rights of action of the same, and all claims for damage against said railroad company, so far as said Park was able to transfer his rights thereto." Several deeds of correction are also set out, which need not be noticed; and it is alleged that plaintiff sold the land to one Darling in June, 1887, which was after the commencement of this suit, but by the terms of the sale he reserved and retained his claim against the defendant for use of the premises and for stone taken therefrom.

It is further alleged that the railroad was built and in operation over said land on and before sixth of July, 1872, and has been operated thereon ever since that date; that the "defendant's occupancy of said right of way    *    *    *    has been of such a nature as to preclude the use and occupancy of the same by the plaintiff so as to derive any benefit or profit therefrom;" that from 1872 to the date of the deed from plaintiff to Darling the defendant quarried and removed from the strip of land large quantities of stone and has refused to account for the same and the use of the land. An account for the one-half of the stone and use of the property is then set out amounting to $3,994 with a prayer for accounting and for judgment.

The defendant company, it will be seen, has had possession of the strip of land since July 6, 1872, to the commencement of this suit in August, 1883, and during that time operated its road thereon, the plaintiff being in the possession of the residue of the tract. These facts, it is urged by the defendant, show such an acquiescence on the part of the land owner as to amount to a waiver of his rights, save the right to be compensated for the value of the land, estimated as of the date of the first entry by the defendant.

The case of *Provolt v. Railroad*, 57 Mo. 256, cited is support of the foregoing proposition was an action of ejectment. One railroad company commenced proceedings to condemn the property, and, while they were pending, entered into possession of the land and constructed a railroad thereon with the knowledge of the land owner, and without objection from him. The road was then leased to another company. Subsequently the report of the commissioners was confirmed, but the compensation awarded was not paid. The plaintiff, it was held, could not recover. The conclusion reached is placed on the ground that he waived prepayment, because of the fact that he was present all the time, witnessed the progress of the work, and made no objection to the construction of the road before payment of the compensation.

*Baker v. Railroad*, 57 Mo. 265, was also an action of ejectment. The plaintiff had agreed to relinquish the right of way on condition that the company should comply with the law in regard to fencing and making cattle guards and farm crossings, and the company took possession and constructed its road by the consent of the land owner, but did not perform the conditions upon which it was to receive the deed of relinquishment. In that case there was a clearly proved permission given to the company to construct the road over the land, and because of this consent it was held the plaintiff could not eject the company. By attending to the facts of the cases just cited, it will be seen that they hold the land owner may waive prepayment of the compensation, and when he does this, or permits the company to take possession and construct its road, he cannot treat the company as a wrongdoer and sue in ejectment or trespass. The permission or license to enter and construct the road may be inferred from attending circumstances. But it is equally well

settled that when a railroad company builds its road upon land without having acquired a right of way under the eminent domain law, and without the consent of the owner, the latter may recover in ejectment or trespass. Mere inaction on his part, though he is informed of the fact that the company has entered or constructed its road upon his land, will not deprive him of these remedies. *Walker v. Railroad*, 57 Mo. 275; *Bradley v. Railroad*, 91 Mo. 493; *Railroad v. Randolph Town Site Co.*, 103 Mo. 452.

The doctrine that the public has an interest to be protected after the railroad has been constructed, has been invoked in some adjudicated cases to protect the company, but such a doctrine cannot justify a wrongful entry and use of private property. The constitution secures the right to have the compensation for the property taken paid to the owner or into court for his use before his property rights are disturbed; and this right guaranteed by the present constitution and former statutes cannot be nullified by any supposed public interest. In this state the duty of instituting proceedings to condemn is devolved upon the railroad company, and the company must obtain the assent of the property owner to enter and construct its road or procure the right so to do by condemning the property, otherwise it will be a wrongdoer, and the property owner has the same remedies that he would have against any other like wrongdoer. The mere fact that he saw the road build upon his land, and did not object, will be no protection to the company, unless such want of objection and the other circumstances justify the inference of consent on his part. Speaking of some of the decided cases Mr. Lewis says: "So far as regards mere acquiescence as an estoppel, it seems to us the cases are not well founded. There is no law which compels a man to protest against a wrongful

entry upon his land at the peril of being held to ratify it. Both parties know their rights. The law provides a mode in which the party seeking to obtain property for public use may do so lawfully. If such party disregards the mode prescribed and enters upon property without consent, it is a wrongdoer and can acquire no rights by expending money on the property. Nor does the owner lose any rights by mere delay." Lewis on Eminent Domain, sec. 648.

While it appears from the petition that defendant has been in possession of the strip of land from 1872 to the commencement of this suit in 1883, and during that time operated its road over the same, still, it does not necessarily follow that plaintiff or any of his grantors assented to such use and occupancy. Such a conclusion cannot be drawn in the face of the allegation that defendant or its predecessor built its road on the land without having acquired any title thereto or interest therein. The holders of the legal title could have maintained ejectment at any time from 1872 to May 17, 1882, at which date the defendant procured a deed from Park for an undivided one-half of the strip occupied as a right of way. The defendant was also liable for the rental value of the property, and for waste in such an action, or in a suit brought for that purpose only, on the facts stated in the petition in this case. Whether the plaintiff could have maintained such a suit on his equitable title and possession we need not determine; for the deed from Park to him not only vested in him the legal title to the undivided half of the land used as a right of way, but it assigned to him all claims for damages which Park had or held against the defendant. Such a claim for damages may be assigned. *Chouteau v. Boughton,* 100 Mo. 406. It follows from what has been said that the petition shows

a good cause of action in favor of the plaintiff for one-half of the rental value of the strip of land, and for one-half of the value. of the stone taken therefrom down to May 17, 1882.

4. When the defendant acquired the deed from Park on the last named date for the undivided one-half of the land used as a right of way it and the plaintiff became tenants in common. The point is made that the deed from Park to plaintiff does not convey the undivided half of the right of way. That deed first conveys the entire land including the right of way by the use of the words grant, bargain and sell, and then says "subject, however, to the conveyance made by said Park of one undivided half of the right of way through said land to" the railroad company. Thus far this deed vested in plaintiff the undivided one-half of the land, including the right of way. For title to this half the plaintiff does not, therefore, stand on the subsequent assignment clause before mentioned. The plaintiff and the defendant being tenants in common, the further question arises whether plaintiff can recover for rents and rock removed while that relation existed.

One tenant may recover in ejectment against a cotenant by showing that defendant ousted him or did some act amounting to a total denial of his rights as such cotenant. 1 Revised Statutes, 1879, sec. 2248. Should the plaintiff recover possession he would, under our statute, be entitled to recover damages for waste and for. rents and profits. Another section of the statute, 3111, makes one tenant in common liable to a cotenant for waste. Where the land is free to all of the tenants in common so that each may enter and enjoy the premises and one of them enters, he cannot be made to pay rent to the other cotenant who neglects or refuses to do the same. But where one tenant occupies the whole of the land and excludes his coten-

.ant from entering and enjoying the property, he will be liable to the tenant thus excluded for the latter's proper share of the rental value of the property, as well as for waste, and this without regard to any .statute like that of 4 and 5 Anne.

Trespass will lie in favor of an ousted cotenant. Freeman on Cot. & Part. [2 Ed.], sec. 300; 11 Am. & Eng. Encyclopedia of Law, 1101. An actual ouster or turning out is not necessary, but the act or declaration constituting the ouster must be unequivocal and notorious. *Warfield v. Lindell*, 30 Mo. 272. Ouster is the actual turning out or keeping excluded the party entitled to the possession of any real property. Bouvier's Law Dictionary. Any resistance preventing the plaintiff from obtaining effective possession of the land of the cotenancy is an actual ouster. Freeman on Cotenancy and Partition [2 Ed.], sec. 301. The petition shows that defendant continued to use the property as and for a railroad right of way. The property being farm land, such a use must of necessity have excluded the plaintiff. Besides this it is in terms alleged that defendant's occupancy of the right of way has been of such a nature as to preclude the use and occupancy of the same by the plaintiff so as to derive any benefit or profit therefrom. An ouster is sufficiently disclosed by the petition. It follows that the plaintiff could have maintained ejectment for his interest in the land, and in that or an independent suit recovered damages for rents and waste.

5. It is alleged that the defendant excavated and removed from the land a large quantity of rock, the amount and value being stated, and sold a part thereof and used the residue in the improvement of its road at various places and has refused to account for the rock so sold and used, and that the removal of the rock diminished the value of the land. Waste on the part

of a tenant for life or for years, it has been held, consists in such acts as tend to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance. *Proffitt v. Henderson*, 29 Mo. 325. Waste is an injury done or suffered by the owner of the present estate which tends to destroy or lessen the value of the inheritance. Cooley on Torts [2 Ed.], 392. Accordingly it was held in the *Proffitt case* just cited, that the cutting of timber would not be waste if cutting it enhanced the value of the land, but would be waste if the cutting of the timber produced lasting damage to the inheritance or lessened its value. Applying these principles of law to the averments of the petition, it must be held the defendant committed waste in excavating, removing, selling and using the rock.

6.    The second amended and supplemental petition sets up a continuation of the acts complained of, from the date of the filing of the first petition down to the date at which plaintiff sold the property, which was subsequent to the commencement of this suit. It appears on the face of the judgment that damages were assessed down to the last named date, and it is insisted that this is error. Section 3573, Revised Statutes 1879, provides: "A party may be allowed, on motion, to file an amended or supplemental petition, answer or reply, alleging facts material to the cause, or praying for any other or different relief, order or judgment." This section of the code, it will be seen, provides for filing a supplemental petition. Such a pleading was well known in equity, and as many of the sections of our practice act are taken from rules of equity pleading, it is proper to look to such rules for the purpose of ascertaining what the statute means by a supplemental petition. In equity pleading the extent of relief could be enlarged by stating a continuation of the same

grievance after the commencement of the suit, and the new matter was brought in by way of a supplemental bill, and this may be done under our code. *Ward v. Davidson*, 89 Mo. 445. That was an equity suit, it is true, but the statute before quoted applies to legal as well as equitable causes of actions. It seems to be held in other code states that matter showing a continuation of the same wrong may be brought on the record by a supplemental petition and damages recovered for the continuation of such grievance down to the filing of such pleading. 1 Boone on Code Pleading, sec. 40.

The second amended and supplemental petition was framed on the theory that the suit was one in equity for an accounting; and the further contention is that the judgment cannot stand, because if the petition discloses any cause of action it is one of law. The first amended petition was framed on the theory that the suit was one at law, and the charge seems to have been made because the defendant insisted in its answer to the first amended petition that the suit should be in equity. We pass over the question made by the plaintiff that the defendant is now estopped from questioning his right to sue in equity. If we are right in what has been said, the plaintiff has, on the face of his last pleading, on action at law for all the damages sued for. Nor is it necessary to say whether he may or may not also sue in equity on the facts disclosed. It is enough for all the purposes of this case on the present record, to know that the petition sets forth facts sufficient to constitute a cause of action at law or in equity; for the judgment rendered is such as flows from the alleged facts.

And, if it be true that the petition discloses two causes of action which should have been separately stated, still that can be of no avail here; for the remedy in such a case is by motion. *Mooney v. Kennett*, 19 Mo.

551; *Otis v. Mechanics' Bank*, 35 Mo. 128; *Christal v. Craig*, 80 Mo. 367. The judgment should, therefore, be affirmed. BRACE and MACFARLANE, JJ., concur in this opinion.