ZEIDEMAN, Plaintiff in Error, v. MOLASKY, Defendant in Error.

St. Louis Court of Appeals, April 10, 1906.

1. **GUARDIANSHIP DE SON TORT: Money Had and Received.** Where one assumed control over the person of a minor and appropriated her earnings, he became thereby guardian *de son tort* of such minor, and she, on the termination of such guardianship at her majority, could maintain against her guardian *de son tort* an action for money had and received to recover such earnings.

2. ————: **Resulting Trust.** A guardian *de son tort* holds the earnings of his ward, accumulated during the infancy of the ward, as trustee of a *resulting trust*, and where a guardian *de son tort* retained the ward in his employment after she became of age,

under an agreement that he would account for her earnings and hold and invest them until a suitable husband could be found for her, and then account for them, he became, as to such earnings, the trustee of an *express trust.*

3. ———: ———: **Express Trust.**    While an action at law for money had and received was the proper remedy by which the ward could recover the earnings accumulated under the guardianship *de son tort*, against the guardian as trustee of a *resulting trust*, an action at law would not lie for the earnings accumulated after the majority of the ward, under an agreement to account for the same by the guardian, he being as to such earnings the trustee of an *express trust* and there having been no accounting or a settlement between the two.

5. **PRACTICE: Improperly Uniting Different Causes of Action in the Same Count.**    An action at law for money had and received, to recover earnings accumulated and held by a guardian *de son tort*, can not properly be united in the same count with an action to charge the defendant, as trustee of an express trust, having in possession earnings of the plaintiff accumulated after becoming of age, under an agreement to account for the same.

6. ———: ———: **Improperly Uniting Different Causes of Action in Same Petition.**    Such different causes of action may be united in the *same petition,* but not in the *same count,* and a demurrer to a petition, in which they are united in the same count, on the ground that "several causes of action are improperly united in the *same petition*" will not lie: where such causes of action are improperly united in the *same count,* the proper remedy is by motion to compel the plaintiff to elect on which he shall proceed to trial.

Error to St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED.

*F. W. Imsiepen* and *Charles Summers* for plaintiff in error.

The petition states a single cause of action, and withal, a good cause of action against defendant.    It states an action at law for an ascertained sum of money had and received by defendant as trustee of a trust, the terms whereof were expressed by the Laws of Missouri

(chap. 34, R. S. 1899), when, on August 1, 1892, he took possession and assumed the care of plaintiff's mind, body and estate, and the duties thus assumed over plaintiff's personal estate, i. e., her earnings and increments, continued until he ceased to exercise the authority over plaintiff's earnings and increments. Perry on Trusts, sec. 245; R. S. 1899, sec. 3529; Lee v. Lee, 55 Ala. 599. But here a bill for an accounting would be dismissed because there is an adequate remedy at law for a sum ascertained from the fixed value of plaintiff's services and the ascertained rate of interest. Underhill v. Morgan, 33 Conn. 505; 22 Ency. Pl. and Pr., 9, and cases cited. And, independent of Molasky's promises, at all times made to plaintiff, both before and after she had attained her majority, the relations of bailiff and ward created an express trust, the existence of which, under the acts and circumstances of the parties, was required to continue until there had been an accounting by Molasky to Zeideman, and until the confidential and fiduciary relations had ceased to exist, and defendant cannot set up the statute of limitations. Huettelman v. Vesselman, 48 Mo. App. 582; Perry on Trusts, sec. 245, and cases cited. And such an express trust in personalty is lawfully established by parol testimony. Pitts v. Weakly, 155 Mo. 109; In re Soulard, 141 Mo. 664; Perry on Trusts, sec. 83; Wacker v. Wacker, 48 S. W. 835; Grimes v. Wilson, 4 Blackf. 332. And the relations of bailiff and ward are here pleaded by the plaintiff not for the purpose of special relief, but as demanding a rigid scrutiny of any off-set which defendant may set up in his answer. Davidson v. Hawkins, 6 Ill. 179.

*Lyon & Swarts* for defendant in error.

The amended petition is demurrable, because it improperly unites in one count several distinct causes of action. Meyers v. Field, 37 Mo. 439; Hoagland v. Railroad, 39 Mo. 457; Peyton v. Rose, 41 Mo. 261.

STATEMENT.—The court sustained a demurrer to the petition. Omitting caption, the petition is as follows:

"Plaintiff states she was born in the empire of Russia on the twenty-sixth day of February, 1879, of poor Hebrew parents, that her father died about one month after her birth, and that her mother remarried a short time thereafter; that in the month of September, 1889, plaintiff arrived in the city of St. Louis, Missouri, in a state of penury, illiteracy, ignorance, without a guardian and emancipated, and for three years thereafter, and without any educational opportunities, and without a guardian, provided for herself by securing employment from others for wages in the several successive capacities of nurse girl, apprentice and domestic, while her scant earnings were appropriated by a relative for procuring transportation to America for plaintiff's elder sister, and which sister was, at the times hereinafter stated, defendant's wife.

"That on or about the first day of August, 1892, and at all times hereinafter stated, plaintiff was able-bodied, but illiterate and ignorant of her personal rights, and was without a guardian, but was able to and did perform the duties of nurse girl, domestic and scrub girl, and that the services in said city at the times hereinafter stated of a domestic and scrub girl, of the nature as hereinafter shown to have been performed by plaintiff for defendant, were reasonably worth $18 per month plus board and lodging.

"That at all times hereinafter stated, defendant was a thrifty retail merchant and householder of the Hebrew race, with full knowledge of plaintiff's status, ability as a domestic, and of her illiteracy and ignorance.

"That on or about the first day of August, 1892, in said city of St. Louis, defendant took possession and control over plaintiff's person and mind and placed plaintiff in his household as his domestic, and as scrub woman of his store, and thereafter for a period of six

years, ending August 1, 1898, and again during the period from June 1, 1899, to August 1, 1902, and again during the period from August 17, 1904, to March 17, 1905, defendant at all times so employed plaintiff to the full limit of plaintiff's physical capacity, and at all times denied plaintiff all opportunities for securing the rudiments of or any education, and defendant moulded plaintiff's mind and character to his own exclusive use and benefit as his domestic, and denied plaintiff the right to receive and enjoy or invest the said value of her said servitude; that during the said first period of six years, ending August 1, 1898, under the facts stated, defendant acted as plaintiff's guardian and *curator de son tort,* and as such defendant converted plaintiff's said earnings to his own personal use, and invested the same in his business and converted the accrued profits from his said investments to his own use, and at all times kept plaintiff in ignorance of her personal rights to demand and secure from defendant at the end of six years an accounting and settlement for her said earnings invested as aforesaid; and defendant at all times herein stated, falsely represented to plaintiff that he had a right to withhold from plaintiff said earnings until defendant and his wife in due time had selected for plaintiff a proper husband, and that when the time arrived plaintiff and plaintiff's husband would receive said earnings and profits thereon; that plaintiff, being ignorant of her rights at all times, believed and relied upon defendant's said false representations, failed to assert and exercise her said rights to such final accounting and settlement.

"That thereafter, on or about the 1st day of August, 1898, and while smarting under the physical abuses and mental neglect suffered by her during her said six years of servitude, plaintiff made her escape from defendant's home in a state of abject mental ignorance, penniless and without decent attire, and proceeded to Staunton, Illinois, where for ten months ending June 1, 1899, plaintiff was in the employ of an uncle, at whose house plain-

tiff first acquired her then first knowledge of the English alphabet and of figures; that on said last-named date plaintiff was persuaded by defendant to resume, and plaintiff did resume, her former station and duties as domestic in defendant's said household and store, under the representation then and there made by. defendant, and at all times believed and relied upon by plaintiff, that defendant would soon provide plaintiff with a husband, and defendant would then duly turn over to plaintiff the earnings and profits both accrued and thereafter to accrue on account of plaintiff's services; and plaintiff, for the period from June 1, 1899, to August 1, 1902, continued under defendant's said domination and employment, and on said last-named date plaintiff again made her escape from defendant's said home and went to Staunton, Illinois, for the same reasons and under the same state and condition which caused her to leave defendant on the 1st day of August, 1898, as aforesaid, and plaintiff remained at Staunton, Illinois, in the employ of her aforesaid uncle until the 17th day of August, 1904, and during her second period with her uncle at Staunton, Illinois, plaintiff received further instruction in the rudiments of knowledge, but continued in ignorance of her rights and of defendant's duties for an accounting.

"That on said last-mentioned date defendant again prevailed upon plaintiff to return to his home at St. Louis, under representations then and there made to plaintiff that plaintiff's said invested earnings and profits, and plaintiff's future earnings as domestic for defendant, would be duly invested by defendant and would be paid to plaintiff or to plaintiff's husband, as soon as such suitable husband could be found, and that defendant and defendant's wife would at once address .themselves to the task of securing such a suitable young man for plaintiff.

"That plaintiff, while still relying upon defendant's said representations and promises then made, and as

previously made as aforesaid, and while still believing them to be true, did, from the period from the 17th day of August, 1904, to the 17th day of March, 1905, continue to perform for defendant the services of domestic at his house, as scrub woman at his store, under conditions identical with those which had obtained during said two preceding terms of servitude under defendant, as aforesaid.

"That, a few days prior to the 17th day of March, 1905, plaintiff and defendant had together agreed upon a suitable young man as plaintiff's husband and defendant was, on and prior to said date last mentioned, requested by plaintiff to render a full, true and correct account and make a complete settlement to plaintiff for plaintiff's said accrued and accumulated earnings together with the accrued interest thereon, which request defendant has failed and still fails and refuses to do.

"Plaintiff states that the premises considered, defendant holds plaintiff's earnings from August 1, 1892, to August 1, 1898, as plaintiff's guardian *ex malefacio;* that, as such guardian, it was defendant's duty carefully to guard, protect and retain control over, and to annually safely invest said earnings, with interest compounded with annual rests; at the highest and best interest, until a final settlement was either made or lawfully tendered by defendant to plaintiff, after the 26th day of February, 1897, when plaintiff's said minority ended, and if not made or tendered on said last-named date, then defendant continued thereafter to be chargeable for said earnings, together with interest compounded as aforesaid, until defendant did lawfully tender plaintiff a full, true and complete statement and render such accounting.

"That defendant held plaintiff's earnings for the period from June 1, 1899, to August 1, 1902, and for the period from August 17, 1904, to March 17, 1905, as trustee of an express trust to the use and benefit of plaintiff, and that, under the terms of said trust, it was defen-

Zeideman v. Molasky.

dant's duty annually to safely invest said earnings at the highest and best interest, with such interest compounded with annual rests, until defendant lawfully accounted for and tendered to plaintiff said earning, together with such interest.

"Plaintiff states that defendant at all times herein stated has invested plaintiff's said earnings in his business, and has at all times realized annually, interest and profits on said investment at the rate of six per cent per annum, and that defendant still holds said earnings and profits in his possession and that the same is now due and unpaid to plaintiff.

"That the premises considered, defendant is indebted to plaintiff for said three periods of servitude, in a sum of money which represents, as principal and interest, so compounded, until paid, as follows:

|  | Principal Debt. | Added Interest. | Added Earnings Per Year. | Total. |
|---|---|---|---|---|
| August 1, 1894 .. | $ 216.00 | $ 12.96 | $216 | $ 444.96 |
| August 1, 1895 .. | 444.96 | 26.69 | 216 | 687.65 |
| August 1, 1896 .. | 687.65 | 41.25 | 216 | 944.90 |
| August 1, 1897 .. | 994.90 | 56.69 | 216 | 1,217.59 |
| August 1, 1898 .. | 1,217.59 | 73.05 | 216 | 1,506.64 |
| August 1, 1899 .. | 1,506.64 | 90.39 | 36 | 1,633.03 |
| August 1, 1900 .. | 1,633.03 | 97.98 | 216 | 1,947.01 |
| August 1, 1901 .. | 1,947.01 | 116.82 | 216 | 2,279.83 |
| August 1, 1902 .. | 2,279.83 | 136.98 | 216 | 2,632.61 |
| August 1, 1903 .. | 2,632.61 | 157.95 | —— | 2,790.56 |
| August 1, 1904 .. | 2,790.56 | 167.42 | —— | 2,958.02 |
| March 17, 1905 .. | 2,958.02 | plus 126. | —— | 3,084.02 |

"That said sum of $3,084.02 carries interest at the rate of six per cent per annum, compounded with annual rests from and after March 17, 1905, until paid by defendant to plaintiff.

"Wherefore plaintiff prays judgment against the defendant in the sum of $3,084.02, together with interest at the rate of six per centum per annum, compounded with annual rests and after March 17, 1905, as aforesaid, and for her costs in this behalf expended."

The demurrer is as follows:

"Now comes the defendant and demurs to plaintiff's amended petition herein, and for ground of said demurrer states:

"1.   Several causes of action have been improperly united in said amended petition.

"2.   Said amended petition does not state facts sufficient to constitute a cause of action against defendant."

The plaintiff appeals.

NORTONI, J. (after stating the facts). — 1.   The action is for money had and received.   Woerner's Amer. Law of Guardianship (1897), at page 76, states the law thus:

"The term *quasi guardian*, or guardian *de son tort*, has been applied to persons who, without legal appointment or qualification, assume the functions of a guardian by exercising control over the person, or estate, or both, of a minor.   He is subject to all the responsibilities that attach to a legally constituted guardian or trustee.   If he takes advantage of the confidence reposed, or of the means afforded him by such relation, by buying up outstanding debts of the estate, for instance, at an under rate, and using them, with or without the sanction of a judicial proceeding, to acquire in his own name the valuable lands of the infant wards, he is guilty of fraud and breach of trust, entitling the infants to the interposition of a court of equity.   He who arrogates to himself functions of a guardian will be held to stricter account in chancery than a regularly appointed guardian.   So the agent or husband of an administratrix who assumes control and management of the estate and uses the trust funds for his private purposes, makes himself liable to

the infants as a trustee *de son tort.*" [Grimes v. Wilson, 4 Blackford's Rep. (Ind.) 331; Hanna v. Spotts, 5 B. Mon. (Ky.) 362; Johnson v. Smith's Admr., 27 Mo. 591.] And it is upon the principle incorporated in the text supra that the appellant predicates her right of recovery stated in the first paragraph of the petition. The allegations therein contained are to the effect that respondent took charge of her person and earnings while an infant and continued so in charge during all of the remaining period of her infancy and appropriated the result of her labors to his own use, etc., keeping her in ignorance of her rights in the premises up to the date and even after she became of age. The demurrer admits the facts stated to be true. Granting to appellant, then, the full force of the allegation with respect to the alleged guardianship *de son tort,* it results that respondent holds the value of her services and interest thereon from August, 1892, the date of his taking her into his keeping, up to February 26, 1897, the date of her majority, as trustee, for it is well settled that one who acts as guardian without authority, by his wrongful assumption, or even under a void appointment to that office by a court without jurisdiction, becomes liable as trustee *in invitum.* [Woerner's Amer. Law of Guardianship (1897), 313 and 128; Hanna v. Spotts, 5 B. Mon. (Ky.) 362; Johnson v. Smith's Admr., 27 Mo. 591; Chaney v. Smallwood, 1 Gill. (Md.) 367; 28 Amer. and Eng. Ency. Law (2 Ed.), 946; Gray v. Obear, 54 Ga. 241; Grimes v. Wilson, 4 Blackford's Rep. (Ind.) 331.] And the relation of trustee and *cestui que trust* being established, it will continue until the account is settled or discharged. And it follows that a guardian *de son tort* continuing in possession, having failed to account at the termination of the guardianship by the majority of the ward, the relation of trustee will continue after the infancy is determined. [Chaney v. Smallwood, 1 Gill. (Md.) 367.] And such guardian may be made to account in a court

of equity. [Woerner's Amer. Law of Guardianship, 77-128-313; Field v. Torrey, 7 Vt. 372; Hanna v. Spotts, 5 B. Mon. (Ky.) 362.] As the subject of trusts is a matter of chancery, and the subject of guardian and ward was formerly of that jurisdiction as well, and inasmuch as the peculiar powers of that court are especially appropriate to render adequate and competent justice in matters of this nature, the course usually pursued to obtain an accounting and settlement in such cases is by a bill in equity for that purpose, as by reason of the guardianship *de son tort,* the matter is not properly within the jurisdiction of the probate or other orphans' court. But it is now settled as well that the ward, upon attaining majority, may maintain an action for money had and received against such guardian for the moneys of the ward received by the guardian during the period of his assuming to act in that capacity. This doctrine, that the *cestui que trust* can maintain an action for money had and received against the trustee, after the termination of the trust relation, is said to result from the fact that the action for money had and received is based upon principles of equity. [Underhill v. Morgan, 33 Conn. 105; Pickering v. DeRochemont, 45 N. H. 67; Johnson v. Smith's Admr., 27 Mo. 595; Woerner's Amer. Law of Guardianship (1897), 313-314.] The rule that an action for money had and received can be maintained by the *cestui que trust* against such guardian who stands as trustee to him on an unsettled or unascertained account, is somewhat peculiar and not exactly consonant with the general doctrine pertaining to the trust relation, yet in a case involving a guardianship *de son tort,* and on this question in point here, it was decided by our Supreme Court that action for money had and received was a proper remedy, and under the Constitution, this authority is controlling on this court. [Johnson v. Smith's Admr., 27 Mo. 595.]

From these consideration it appears that the first paragraph of the petition states a case arising out of the

relation of guardianship *de son tort* and ward, whereby the respondent is declared to be trustee for the appellant to the amount of her earnings and interest thereon up to the time of her coming of age and for which respondent is liable to her as for money had and received.

2. It appears from the allegations of the petition that appellant became at the age of maturity February 26, 1897, and remained with and under the control of the respondent and rendered services, etc., after that date until August 1, 1898, when she withdrew herself from his control and took up her abode with an uncle in Illinois. The petition seems to treat the earnings in respondent's hands for this period of employment after her majority and prior to August 1, 1898, as money in possession as trustee by virtue of the guardianship *de son tort*. We are of the opinion that this proposition is unsound and cannot be supported either on reason or authority, as upon the arrival of the age of maturity, the guardianship ceased. [28 Amer. and Eng. Ency. Law (2 Ed.), 946.] Yet the moneys in his hands arising during her infancy continued in trust. But the question whether these earnings are held by the respondent as trustee resulting from the guardianship or trustee of an express trust by virtue of his promise thereafter made to keep and invest the same, is not very material here and we are not making a point upon it.

3. The allegations next show that after appellant had withdrawn herself and taken up her abode with an uncle in Illinois, respondent induced her to return and enter into his employment about June 1, 1899, in which employment she remained for three years, ending August 1, 1902, upon which date she quit his employment and returned a second time to her uncle's home in Illinois. On August 17, 1904, respondent appeared and persuaded and induced her a second time to return to his employment, which she did, and remained therein for a period of seven months, ending March 17, 1905. It is alleged that she was induced by respondent in

each of these instances to return and enter into his service under the express promise and agreement that he would soon provide her with a husband and then he would turn over to her all of the earnings; those due for the several periods of service and the profits thereon, both accrued and to accrue; and upon these facts it is contended, or rather it is alleged in the petition, that defendant holds plaintiff's earnings from August 1, 1892, to August 1, 1898 (the period of the alleged guardianship) as plaintiff's guardian *ex maleficio*, whereby he is trustee of a resulting trust therefrom, and that he holds her earnings for the period of employment from June 1, 1899, to August 1, 1902, and for the second period of employment, from August 17, 1904, to March 17, 1905, as trustee of an express trust. Placing the most favorable construction upon the petition in favor of the pleader, the result of the whole is that the allegations show the respondent: first, to have acquired certain of appellant's earnings during the period of her minority and guardianship under such circumstances as to charge him as trustee out of the relation of guardian and ward; and second, that he became possessed of her earnings for the two periods from June 1, 1899, to August 1, 1902, and from August 17, 1904, to March 17, 1905, under the express agreement to hold and invest the same until a suitable husband had been found for her, when he would account for all of said earnings and their increments by which said arrangement and express agreement respondent became trustee of an express trust to account to appellant therefor at the time a suitable husband was agreed upon, which suitable husband, according to the allegation, has been agreed upon and demand made for the earnings aforesaid prior to the filing of the petition.

4. Since trusts of personal property are not within the Statute of Frauds, it may be laid down as a general rule that a valid trust of that nature may be created verbally and proved by parol evidence, evidencing with sufficient clearness the intention of the party to create

a trust. [28 Amer. and Eng. Ency. Law (2 Ed.), 870; Huetteman v. Viesselman, 48 Mo. App. 582; Pitts v. Weakley, 155 Mo. 109, 55 S. W. 1055.] And it is not necessary that the words "trust" or "trustee" or equivalent, be employed, if the clear intention to create a trust appears from the facts and circumstances of the case. [In re Soulard, 141 Mo. 642, 43 S. W. 617.]

It therefore appears from the petition that respondent is trustee of an express trust in so far as appellant's earnings and their increments arising out of the several periods of employment since her majority, are concerned. Now this action is for money had and received and such form of action is a proper remedy by the *cestui que trust* against the trustee of an express trust only when the trust is fully executed and the amount settled and there is nothing to do but for the trustee to pay over the amount to the *cestui que trust*. An action at law for money had and received will not lie when the trust is still open, nor until the final account is settled and a balance ascertained. [Case v. Roberts, 1 Holt's N. P. C. 501; 2 Perry on Trusts (5 Ed.), sec. 843; 22 Amer. and Eng. Ency. Pl. and Pr. (2 Ed.), 137-138; Frost v. Redford, 54 Mo. App. 345.] From the allegations of the petition relative to the relations between the parties other than those arising out of the alleged guardianship, it appears that there has been no settlement nor ascertainment of the alleged account; in fact, it appears that the funds alleged to be the subject of the trust are in no manner ascertained. Such funds arise out of a contract of hire in which the compensation was not even agreed upon. No prior contract is shown whereby any certain amount is to be allowed appellant as her compensation and invested for her benefit, and in truth, it affirmatively appears that no settlement or ascertainment of the alleged trust account has ever been had between the parties. Wherefore, it is plain that the action for money had and received will not lie, under the circumstances stated, for the amount that may be due appellant by

virtue of the several employments, her wages and increments since her majority, the remedy being by bill in equity to obtain an accounting therefor. Having thus ascertained that the respondent stands as trustee of a resulting trust by virtue of the guardianship *de son tort,* and the trustee of an express trust by virtue of his promise to hold and invest her wages after majority for her benefit, one of the questions presented for decision is: is it permissible to unite in one count of the petition, a cause of action arising by virtue of these several trusts? And another question is: if it is not, is the demurrer filed sufficient to challenge the sufficiency of the petition in this respect? It will be observed that there is but one count in the petition. The pleader proceeded no doubt upon the theory that as there was but one trustee, there was but one trust or trusteeship, and, therefore, it was sufficient to set up the facts in one count, showing the several relations under which arose the trusts, the several sources from whence the trust funds came into the hands of the trustee, and ask for judgment for the amount thereof. Now it is beyond question that these several causes of action cannot be united in one and the same count of the petition; and upon proper motion, the pleader would be required to elect. We will spend no time nor cite authorities in support of this proposition. It is so familiar as to be axiomatic.

5. The real question in the case in its present form is: does the demurrer reach this insufficiency? The demurrer leveled against the petition contains but two specifications of its insufficiency. "First. Several causes of action have been improperly united in said amended petition. Second. Said amended petition does not state facts sufficient to constitute a cause of action against defendant." We will not notice the second ground specified further than to say that the petition does set up facts sufficient to constitute a cause of action in a case of this nature for money had and received with respect to the alleged guardianship *de son tort.* So the

second ground of the demurrer is not well taken. There is no doubt but that it states facts which, properly pleaded, aside from those pertaining to the guardianship, would constitute a cause of action for an accounting in equity against the trustee; and aside from this, there are facts which would sustain three separate causes of action at law for services rendered to the respondent by appellant at his instance and request, for the three several periods of employment after her majority. It is palpable that the facts stated concerning the guardianship *de son tort* constitute an independent cause of action, arising out of that relation, under the circumstances stated, and against which the Statute of Limitations would commence to run at the date appellant was entitled to sue on account thereof by disability being removed; that is, upon her attaining majority; inasmuch as "the trusts intended by the court of equity not to be reached or affected by the Statute of Limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of courts of equity." This question was so decided in Johnson v. Smith's Admr., 27 Mo. 591, a case very much similar in principle but not in fact, to the present action. By what is said on this question, however, it is not intended to decide here that the Statute of Limitations had run against appellant's claim arising by virtue of the guardianship. It is only mentioned as a circumstance tending to show that the guardianship trust was a separate cause. The Statute of Limitations is in no way involved by the pleadings in this case, and, further, there may be sufficient allegations in the petition to the effect that when the guardianship ceased, respondent agreed to keep and invest the earnings of appellant which accrued during her infancy and pay the same to her upon settling the matter as to her future husband, so that an express trust thereby arose which would prevent the running of the Statute of Limitations at least until the happening of the con-

tingency mentioned. We decline to decide the question as it is not material. There being several causes thus stated in one count of the petition, and this defect not being liable to the second specification of the demurrer as above indicated, it is subject to the first specification thereof? It will be observed that the specification of the demurrer is not that there are several causes of action improperly united in one and the same count of the petition, but it is that several causes of action have been improperly united in the same petition. The distinction may seem to be technical and hypercritical, but we are confronted with a positive statute as follows: "The demurrer shall distinctly specify the grounds of objection to the pleadings. Unless it does so, it may be disregarded." [Sec. 599, R. S. 1899.] And under this statute, it has been held that even though the petition be defective, it is error to sustain a demurrer thereto for its insufficiency unless the identical ground of such insufficiency and upon which the demurrer is sustained, are set forth in the demurrer. The statute in this respect has been given a strict construction by our Supreme Court, and this, too, in at least two opinions by Judge BLISS, probably the most learned authority on the Code the State has produced. [Alnutt v. Leper, 48 Mo. 319; McClurg v. Phillips, 49 Mo. 315.] Now it must be remembered in this connection that even though it is not permissible to join these several causes of action in one count, it is permissible under other provisions of the Code, to unite in one petition the several causes of action herein united, if they are stated in separate counts. Section 593, Revised Statutes 1899, is important here, and so far as pertinent, its provisions are: "The plaintiff may unite in the same petition several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they shall arise out of: First, the same transaction or transactions connected with the same subject of action. . . . Seventh, claims by or against a party in some represen-

tative or fiduciary capacity by virtue of a contract, or by operation of law. But the causes of action so united must all belong to one of these classes . . . and must be separately stated, with the relief sought for each cause of action, in such manner that they may be intelligibly distinguished." And under these provisions it has been held that causes of action at law and in equity may be joined in the same petition. Such causes should be separately and intelligibly stated and distinguished, however, for they require separate trials and separate judgments. [Henderson v. Dickey, 50 Mo. 161.] Under this latter section, we find a legislative mandate that several causes of action, stated in the same petition, must be separately stated, etc., equally as positive as that quoted requiring the demurrer to be specific. It would seem therefrom that the specification in the demurrer to the effect that "several causes of action have been improperly united in the amended petition," ought to be sufficient to invite the court's attention to the violation of the statute quoted, which commands that they be stated separately with the relief sought for each cause in such manner that they may be intelligibly distinguished, and this was no doubt the view entertained by the learned trial judge when he sustained the demurrer.

But notwithstanding these provisions, it has become well settled by a long line of adjudicated cases in this and other Code States that the fifth ground enumerated in section 598, Revised Statutes 1899, for which a demurrer will lie, viz.: "Fifth, that several causes of action have been improperly united," has application only to the union of incongruous causes of action and not to the intermingling of causes which it is permissible to join in the same petition. [Otis v. Mechanics Bank, 35 Mo. 128; State ex rel. Ziegenhein v. Tittman, 103 Mo. 553; Childs v. Ry. Co., 117 Mo. 414; Mooney v. Kennett, 19 Mo. 551; Robinson v. Judd, 9 Howard's Pr. Rep. 378.] The rule is uniformly established that when causes of action which might have been properly joined in separate

and distinct counts of the same petition are improperly blended and intermingled in one and the same count, the remedy is not by demurrer, but rather by motion to require the pleader to elect one of the causes and strike out the remainder so improperly intermingled. [Otis v. Bank, 35 Mo. 128; State to use v. Davis, 35 Mo. 406; Childs v. Ry. Co., 117 Mo. 414, 23 S. W. 373; State ex rel., Ziegenhein v. Tittman, 103 Mo. 553, 15 S. W. 941; Bliss Code Pl. (3 Ed.), 412.]

Wherefore it appearing that there is one cause of action at law for money had and received stated in one and the same count of the petition with facts which would constitute separate counts for equitable relief, and that such causes so improperly blended, are so connected with the same transaction or transactions which are the subject of this action that they may be properly joined in separate counts of the same petition, we are impelled to hold that the petition is not subject to the challenge of the demurrer therefor, nor subject to challenge in a manner other than by motion to require appellant to elect one and strike out the remaining causes so stated. The defect complained of not being a subject of demurrer, the judgment must be reversed and the cause will be remanded with permission to appellant to amend her petition if she be so advised. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.